plaintiff to show that the wheel was not properly guarded, the facts were susceptible of and were given exact description, and the inferences to be drawn therefrom depended upon the application of common sense and general knowledge and not upon the advice of those possessing special knowledge; hence, it was for the jury to take the testimony describing the wheel and the dustshields and therefrom to decide for themselves whether or not the latter was a proper guard. "When all the circumstances can be fully and adequately described to the jury and are such that their bearing on the issue can be estimated by all men, without special knowledge or training, opinions of witnesses, expert or other, are not admissible": Ake v. Pittsburgh, 238 Pa. 371, 375. Finally, in Wagner v. Standard Sanitary Mfg. Co., 244 Pa. 310, we decided that "it is competent to produce testimony to show the kind of guards that were available to the defendant and regularly employed by others using such wheels"; and under this rule the plaintiff was permitted to show that it was usual to enclose emery wheels in "three sixteenth and quarter inch steel guards," further, that a guard of this character was "sufficient to resist a breaking emery wheel." It seems to me that the evidence was ample to take the case to the jury and that error was committed in the nonsuit; therefore, I dissent.

---

# Day, Appellant, *v.* Ryan.

*Public officers—City solicitor of Philadelphia—Duty to prepare contracts—Discretionary duty—Mandamus—Act of June 1, 1885, P. L. 37—City contractors—Standing to maintain mandamus.*

1. By the terms of the Act of June 1, 1885, P. L. 37, the city solicitor of Philadelphia is elected by the people to be the legal adviser and to act as attorney and counsel for the city and all its departments and officers. As regards contracts with the city, it is

his duty to prepare them in his office and endorse on each his approval of the form thereof, before the same shall take effect. The duty to prepare and approve contracts and the duty of being the city's legal adviser are not inconsistent, but coexistent, and the city solicitor must perform both. If, in his opinion, there is good legal reason for not approving a contract, he must so advise the city and his failure to do so would be negligence or worse.

2. Contractors to whom a contract to perform city work has been awarded, but with whom no contract in writing has been made with the city, have no standing to maintain mandamus against the city solicitor to require him to prepare a contract for execution by the mayor. Such proceeding, in the last analysis, amounts to an endeavor to obligate the city by a contract, which the contractors have not been able to obtain.

3. The executive officers of the City of Philadelphia, being ready to enter into a contract with architects for the erection of a building constituting one of a series which together would constitute a municipal hospital, requested the city solicitor to prepare a contract for executon with said architects to whom the contract had been awarded. The city solicitor refused to prepare the contract, in view of the fact that there was a previously existing contract which appeared to be inconsistent with the new contract, and which might render the city responsible for more than one architect's fee. The architects filed a petition for mandamus to compel the city solicitor to prepare a contract in writing for execution by the parties. *Held,* the court did not err in quashing the writ, on motion of the city solicitor.

Argued March 26, 1914. Appeal, No. 96, Jan. T., 1914, by plaintiffs, from judgment of C. P. No. 2, Philadelphia Co., June T., 1913, No. 6324, quashing petition for writ of alternative mandamus in case of Frank Miles Day and Charles Z. Klauder, copartners trading as Day & Klauder v. Michael J. Ryan, City Solicitor of the City of Philadelphia. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Petition for writ of peremptory mandamus.

SULZBERGER, P. J., filed the following opinion sur motion to supersede or quash the alternative writ of mandamus:

The plaintiffs, Day & Klauder, ask that a peremptory

mandamus issue commanding the defendant, Michael J. Ryan, who is the city solicitor of the City of Philadelphia, to prepare and approve a written contract by said city with said plaintiffs.

In order that the city shall be bound by a contract to pay money, the charter demands as prerequisites that the councils, which are the legislative branch of the city government, shall first appropriate the money to be expended and that the executive branch, composed of the mayor and several heads of departments, shall perform certain duties imposed on them by law, designed to call forth care and deliberation in the use of the money so appropriated.

In the case before us the departments concerned are at most health and charities, public works, public safety and law. The department most immediately concerned is that of health and charities, because a building is to be erected which is to form one of a series which together will constitute a municipal hospital. Without at this time defining with exactness the nice subdivision of powers among the several departments, we may say that the city is ready to enter into a contract when the four departments named have pursued the course prescribed by law, have mutually agreed that the contract should be made, and the mayor has approved.

The complaint of the plaintiffs, in substance, is that the heads of three of these departments, health and charities, public works and public safety, have agreed that a contract should be entered into with them, that the mayor has signified his approval, but that the head of the law department refuses to approve, that without his approval the plaintiffs will lose their contract, that his approval is an act merely ministerial, and that their only remedy is by mandamus.

The question raised is, therefore, whether the function of the city solicitor in the matter before us is merely ministerial. Under our scheme of city government, it is the duty of the various heads of departments (consti-

tuting, with the mayor, the executive branch of the city government) to consider every proposition from their respective points of view, their several conclusions being designed to be communicated to each other, by way of consultation, for reaching the best results. The law assumes that by this course executive unanimity for working purposes will be reached. This is our scheme of municipal government which has hitherto shown itself to be workable. Its efficiency would be seriously hampered if the executive, or any subdivision thereof, were liable to be restrained in action at the instance of an outsider who disagreed with the views of this or that department. Interference by the courts, in this consultative stage, would be an unwarranted assumption of powers which the law has confided to others.

The plaintiffs, however, contend that in the case before us the city solicitor is not acting in a consultative capacity, that the substantial questions concern only the other named departments and that he is merely to act as clerk or scrivener whose duty it is to write in proper legal form what has been agreed upon by his colleagues.

By the terms of the Bullitt charter, the city solicitor is elected by the people to be the legal adviser and to act as attorney and counsel for the City of Philadelphia and all its departments and officers. As regards contracts with the city, it is his duty to prepare them in his office and endorse on each his approval of the form thereof before the same shall take effect.

The duty to prepare and approve contracts and the duty of being the city's legal adviser, are not inconsistent, but coexistent, and the city solicitor must perform both. If, in his opinion, there is good legal reason for not approving a contract, he must so advise the city, and his failure to do so would be negligence, or worse.

It appears that in the case before us there were complications. On March 21, 1903, councils authorized the then mayor to enter into a contract with an architect to draw the plans and supervise the construction of a series

of buildings which were to constitute a great municipal hospital plant. Ten days later the mayor, in pursuance of the ordinance, executed a contract with Philip H. Johnson, an architect. The latter prepared the necessary plans and specifications, and bids were received for the work on May 1, 1905. The bids were alternative, one for the whole plant for the sum of $2,030,158, and the other for the twenty or more separate buildings contemplated by the plan. The sum of the separate bids equalled the amount asked for the whole plant. From the testimony of the director of public health and charities it appeared that up to the present time from sixty to sixty-five per cent. of the whole contemplated work had been finished under the supervision of Johnson and that his service has been satisfactory. The only qualification of this statement is that for one of the buildings a contract had been entered into with another architect and that the question of Johnson's right in the matter was amicably adjusted by a division of the fees between the rival architects.

On July 31, 1913, the director of the department of health and charities wrote a letter to the city solicitor, in which he said:

"I enclose draft of contract with Day & Klauder prepared by the city architect, Mr. Edward A. Crane, and forwarded by him to me under date of July 28, with the approval of the director of the department of public works which I respectfully submit for your approval as to form. You will notice the signature of Day & Klauder, a somewhat unusal procedure, explained by the fact that Mr. Day sails for Europe to-morrow morning."

The city solicitor, on the same day, replied in writing refusing to approve the contract.

As there is no statute creating or recognizing a city architect, there can be no power in a person claiming that title, to take any step to bind the city by a contract. The utmost effect attributable to the paper was to treat it as a memorandum of the terms of a contract which the

city architect deemed it advisable for the city to make and which the directors of public works and of public health and charities approved.

The subject-matter of the contract was the performance by the plaintiffs of certain services which constituted a part of the labor of building a section of the municipal hospital. The authority to build could be given by councils only.

On May 2, 1913, an ordinance of councils became effective, which appropriated to the department of health and charities the sum of $250,000 for the acquisition of such land and the construction of buildings for the Philadelphia hospital for contagious diseases and the home for the indigent, as councils should thereafter authorize.

On June 11, 1913, an ordinance of councils was approved by the mayor, which ordained: That the director of the department of public health and charities be authorized to construct additional buildings for contagious diseases upon ground now owned by the City of Philadelphia and charge the same to the aforesaid appropriation of $250,000.

When the city solicitor received the letter of July 31, 1913, with its enclosed paper, the question presented to him was whether the ordinance of June 11, 1913, authorized the expenditure of the considerable sum of money involved in the proposed contract. He had before him the ordinance of March 21, 1903, and the contract with Johnson of March 31, 1903. If the latter was still operative, the new contract submitted for his preparation and approval involved a double expense for one service, and would, to that extent, reduce the amount of the appropriation applicable to the cost of the building itself.

This question had evidently not presented itself to the directors. They doubtless assumed that Johnson's contract had ceased to be valid or had no reference to the proposed building. This circumstance, however, could

not operate to relieve the city solicitor of his duty to act as legal adviser for the city. He declined to approve the contract because he feared that the city would be compelled to pay twice for one service. Believing that this could not lawfully be done without the express authority of the councils, he suggested a reference of the matter to those bodies.

The plaintiffs think that this opinion was erroneous in at least two respects:

1. In assuming a power not conferred by law on the city solicitor, and

2. In not holding that the Johnson contract had no bearing upon the matter because either of its original invalidity or its subsequent expiry.

As regards the first reason, we are clearly of opinion that the city solicitor was acting within the line of his duty. As regards the second, we are not called upon to announce a definite conclusion at this time, because even if the city solicitor's opinion were erroneous in law, we have no power to sit as a court of appeal to correct his errors of judgment by mandamus. If any one is legally injured by such error, redress must be obtained in another kind of proceeding, in a manner which will avoid the direct interference of courts in the ordinary functions of municipal government.

There is, however, another aspect of this case which may not be overlooked. The plaintiffs have no status to complain. Their proceeding, in the last analysis, amounts to an endeavor to obligate the city by a contract which they have not been able to obtain. A contract to bind the city must have been duly executed in writing. All previous acts are mere preliminaries which give a party no standing. On this point there can be no doubt since the doctrine was definitely settled on irrefutable grounds in Smart v. Philadelphia (205 Pa. 329, 331).

The peremptory mandamus must be refused.

The court quashed the writ. Plaintiffs appealed.

*Error assigned* was the judgment of the court in quashing the writ.

*Thos. Raeburn White,* for appellant.—The courts have power to enforce the duty of the city solicitor of Philadelphia to prepare contracts to be made with the city as he is required to do by the Act of June 1, 1885, P. L. 37: Com. v. Philadelphia, 176 Pa. 588; Com. v. Larkin, 216 Pa. 128; Chelten Trust Co. v. Blankenburg, 241 Pa. 394.

The elements of a valid contract between the city and Day & Klauder are properly averred in the petition.

The authorization to build included the authorization to employ an architect: Upjohn v. Inhabitants of Taunton, 60 Mass. 310; Burrell v. Portland, 121 Pac. Repr. 1; Peterson v. Mayor, &c., of New York, 17 N. Y. 449.

No competitive bidding was necessary: Horgan & Slattery v. New York, 114 N. Y. Appellate Division 555; People v. Flagg, 17 N. Y. 584; Houston v. Potter, 41 Texas Civil Appeals 381; Newport News v. Potter, 122 Fed. Repr. 321; Silsby Mfg. Co. v. Allentown, 153 Pa. 319.

Plaintiffs have standing to maintain the action: Loraine v. Railroad Co., 205 Pa. 132; Com. v. Larkin, 216 Pa. 128; Com. v. George, 148 Pa. 463.

*James Gay Gordon,* for appellee.—Plaintiffs have failed to disclose in their petition either their own clear legal right to the remedy which they seek, or a corresponding duty on the part of the defendant to perform the act which is sought to be coerced: Com. v. Pittsburgh Select and Common Councils, 34 Pa. 496; Com. v. Fitler, 136 Pa. 129; Davis v. Patterson, 12 Pa. Superior Ct., 479; Com. v. Mitchell, 82 Pa. 343; Com. v. James, 214 Pa. 319; Com. v. Kessler, 222 Pa. 32.

It is only a ministerial act, void of any discretion, which the courts will compel by mandamus: Com. v. George, 148 Pa. 463; Smith v. Com., 41 Pa. 335.

The writ of mandamus will not lie for the enforcement of a duty involving judgment and discretion: Com. v. Cochran, 5 Binney 87; Respublica v. Philadelphia Guardians of Poor, 1 Yeates 476; Com. v. Henry, 49 Pa. 530; Kell v. Rudy, 1 Pa. Superior Ct. 507; Com. v. Board of Public Education, 187 Pa. 70.

PER CURIAM, April 27, 1914:

The order refusing a peremptory mandamus is affirmed on the opinion of the learned president judge of the Common Pleas.

---

# Roach, Appellant, *v.* Irvin.

*Equity—Specific performance—Exchange of real estate—Impossibility of performance—Damages.*

1. A court of equity cannot decree the specific performance of a contract for the exchange of real estate where it appears that the conveyance by defendant would be impossible owing to the fact that prior to the filing of the bill the land had been sold at sheriff's sale under a mortgage.

2. In such case where hand money paid plaintiff by defendant was more than sufficient to cover all the damages suffered by him, he was not entitled to a decree for money damages.

Argued March 27, 1914. Appeal, No. 99, Jan. Term, 1914, by plaintiff, from decree of C. P. No. 5, Philadelphia Co., June T., 1913, No. 3905, in Equity, dismissing bill in equity for specific performance in case of George B. Roach v. Harold C. Irvin. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for specific performance of a contract for the sale of real estate.

On final hearing RALSTON, J., filed the following opinion:

By a formal agreement in writing dated October 7, 1912, VanCleave agreed to convey the property at the