Myers, J.
 

 The principal question for consideration is whether a certain contract for voting machines, known as Exhibit “D,” is illegal by reason of the failure of the Automatic Voting Machine Corporation to furnish a bond as required by Section 4785-161c, General Code. It is contended by the defendants that no bond is required for the reason that the agreement in question is not a purchase but a rental contract authorized by statute.
 

 It is claimed by the defendants that the contract in question was authorized by Section 4785-161a, General Code, but a careful reading of that section will reveal that it provides: First, that where an entire municipality or an entire county has previously adopted or authorized a contract for the purchase of voting machines, then and then only may- voting machines be temporarily rented until the full allotment thereof has been supplied to such municipality or county; and second, for the rental or purchase of voting machines in a
 
 *460
 
 limited number of precincts for experimental use. The language used is “make provision for the experimental use.”
 

 There are two principal methods and one exception by which voting machines may be acquired for an entire county or municipality. The methods are to be found in Section 4785-161, General Code. Under one method “the board of county commissioners of any county or the-legislative authority of any municipality may on recommendation of the board of elections, authorize the purchase of such voting machines * * * respectively for the entire county or for such municipality, either out of current revenue or by the issuance of bonds within the limitations fixed by law.” The word “rent” is not found in the language used. Since the word rent is not used, it follows therefore that the board of county commissioners, in the absence of a vote by the electorate, may, on recommendation of the board of elections, authorize only the
 
 purchase
 
 of voting machines for an entire county or municipality.
 

 The second method for the purchase of voting machines for an entire county or municipality mentioned in Section 4785-161 is by filing a petition signed by two per cent of the electors requesting that the question of adopting voting machines be submitted to the electors at the next general election. The law further provides that upon the filing of such a petition the board of county commissioners shall forthwith determine whether it will be necessary to issue bonds to provide for the purchase of such voting machines, if adopted. If it is deemed necessary to issue bonds therefor, the county commissioners, by resolution, shall provide for the submission on the same ballot, but as a separate issue, the question of issuing such bonds.
 

 An exception to the foregoing methods of purchase of voting machines for an entire county or municipality is to be found in the last sentence of Section 4785-161, reading as follows: “If the electors of any county
 
 *461
 
 or municipality shall have voted prior to the enactment of this provision in favor of adopting the voting machine, then such hoard of county commissioners or legislative authority of such municipality, as the case may be, shall provide for the purchase or rent of such machines in the manner herein provided.” The word “rent” is not found in the entire Section 4785-161, except in the foregoing sentence. The provision is an exception and applies only to a county or municipality which voted to adopt voting machines prior to the effective date of such statute. The statute was enacted as an emergency measure and approved by the Governor on June 29,1931. Since the instant action does not include any proceedings prior to the effective date of the statute, we are not required to construe such special provision except to state that it cannot apply to the instant case.
 

 In the instant case there was no submission of the question to the electorate by the county commissioners, and therefore no adoption of voting machines in Trumbull county. Whatever validity the contract in question may have must therefore be found primarily in the action taken by the Board of County Commissioners of Trumbull county. The record reveals that before the present contract was executed, the board of elections had recommended to the county commissioners that machines for the entire county be purchased on a fifteen-year installment basis, the total cost, including interest, to be $131,458.14. On September 10, 1937, the board of county commissioners refused to authorize the purchase of voting machines for the entire county as thus recommended by the board of elections.
 

 Thereafter further negotiations were had between the board of elections and the defendant corporation and on November 5, 1937, the board of elections voted to send the following recommendation to the county commissioners: “Based upon the use of voting ma
 
 *462
 
 chines at the election on November 2, 1937, the board of elections unanimously recommend [sic] the acquisition of voting machines for use at elections in Trumbull county.” The word “rent” is not found in the recommendation made.
 

 On the same day the board of county commissioners took action as follows: “After giving careful consideration to the question of the purchase and use of voting machines in Trumbull county, pursuant to the recommendation of the board of elections, it has been: ‘Moved by Neil Duck, seconded by R. R. Goddard, that the recommendation dated November 5, 1937, submitted by the Trumbull county board of elections, recommending the acquisition of voting machines for use at elections in Trumbull county, be hereby acknowledged and the board of county commissioners, Trumbull county, Ohio, authorize the acquisition of such voting machines out of current revenue, in accordance with Sections 4785-161 and 4785-161a, of the General Code of Ohio; such contract for the acquisition of said voting machine shall be submitted to and approved by the board of elections. Yeas: Neil Duck, and R. R. Goddard. Nays: None.’ ”
 

 It will be noted that the board of county commissioners did not authorize the board of elections to rent the machines. After giving careful consideration to the question of the
 
 purchase
 
 of-voting machines, it authorized “ acquisition” which is defined by 1 Bouvier’s Law Dictionary, Rawle’s Revision, as “the act by which a person procures the property in a thing. ’ ’ Accordingly it may be said that the only legal effect of the action of the board of county commissioners was to authorize the board of elections to acquire the voting machines — to purchase them.
 

 On November 8,1937, the following action was taken by the board of elections: “The contract from the Automatic Voting Machine Company, of Jamestown, for voting machines for the years 1938 to 1952, inc.,
 
 *463
 
 was presented, and it was moved by Mr. Fisher and seconded, by Mrs. McLain, that the contract be accepted; and that all members of the board sign the same. Upon roll call all voted yes. The contract was entered into upon authorization to acquire voting machines received from the county commissioners.”
 

 Here again we do not find the word “rent” but instead the phrase “to acquire voting machines.” Again referring to Bouvier’s Law Dictionary we find the word “acquire” is defined as follows: “To make property one’s own. To gain permanently.”
 

 The contract entered into by the board of elections and the corporation on November 8 is as follows:
 

 “Contract No. ‘D.’
 

 “This agreement made in duplicate pursuant to authorization of the board of county commissioners and Section 4785-161& of the Ohio General Code, this 8th day of November, 1937, by and between the Automatic Voting Machine Corporation of Jamestown, New York, party of the first part, hereinafter referred to as ‘company’ and the board of elections of and for the county of Trumbull, state of Ohio, party of the second part and hereinafter referred to as the ‘county.’ Witnesseth, that for and in consideration of the agreements hereinafter stated and expressed, the parties hereto covenant and agree with each other as follows:
 

 “First:
 
 — The company agrees to rent and re-rent one hundred (100) United States standard voting machines of the nine party row, forty candidate type similar to the seventy-five (75) voting machines used in parts of the county at the election held November 2, 1937, and it is agreed by the parties hereto that those seventy-five (75) machines shall be a part of the one hundred (100) each accompanied by one instruction model at the following rental prices, such rental prices to be paid on or before July 1st of each year:—
 

 “$10,525.72 plus cost of delivery of twenty-five (25) machines to the county for 1938 and
 

 
 *464
 
 “$8,675.58 each, year thereafter beginning 1939 and including 1952.
 

 “Provided however that the rental for the year 1938 shall be credited with and reduced by the sum if any which the county pays the company for the use of its voting machines at elections during the year 1937.
 

 “Second:
 
 — The company agrees that if and when the county shall have paid it, the total rental from 1938 to 19'52 inclusive described above, no further rental need be paid and the company will at the option of the county give it a bill of sale for said machines.
 

 “Third:
 
 — The county agrees that should it elect to rent and re-rent said one hundred (100) voting machines it will give the company written notice of such intention on or before 'April 1 each year and pay the rental for such year specified above on or before July 1 each year such machines are rented and re-rented.
 

 “Fourth:
 
 — The county further agrees that it will be responsible for the safety and good care of said voting machines during the time they are in the county’s possession, and, if any of said machines shall in any way become damaged during such time the county will pay for such repairs as shall be necessary to put said machines in perfect condition, and the county further agrees that, should it not rent or re-rent said machines in any year it will on or before May 1st of said year return said machines to the company f.o.b. cars Jamestown, New York, all transportation charges prepaid.
 

 “Fifth:
 
 — The county further agrees that said machines while in the possession of the county shall not be subject to any personal property tax and no such tax shall be imposed thereon.
 

 “Provided however that should such tax be imposed upon such machines this agreement of the county to the contrary notwithstanding, and such tax be paid then and in that event in consideration of the reduced annual rental specified above, the county agrees to pay
 
 *465
 
 additional rental equal to such tax for all years in which such tax is paid.
 

 “In witness whereof the parties have hereunto set their seals and duly executed this agreement this 8th day of November, 1937.
 

 “Automatic Voting Machine Corporation,
 

 “By Bussell F. Griffen,
 

 “Vice President.
 

 “ (Corporate Seal)
 

 “Attest:
 

 “Martin L. Badhorn,
 

 “Secretary.
 

 “Board of Elections of Trumbull County, Ohio, “By Clyde Sherman, Chairman.
 

 “(Seal)
 

 “Margaret McLain,
 

 “Bobert Ferrell, Anna L. Brooks,
 

 Clerk. Herbert L. Fisher.
 

 “Jamestown, New York, November 8, 1937. “Board of Elections,
 

 ‘ ‘ County of Trumbull,
 

 “Warren, Ohio.
 

 “Dear Sirs:
 

 “In consideration of your rental contract covering one hundred voting machines which you are about to make with us, of even date herewith, we agree that if all rentals which may become due thereunder are promptly and fully paid you shall have the right to purchase said voting machines on or before August in any of the following years at the prices indicated provided the rental for such year and prior years has been paid in full.
 

 “1938......$98,000.00
 

 1940...... 86,356.77
 

 1942 ...... 74,004.47
 

 1944...... 60,899.91
 

 1939......$92,264.42
 

 1941...... 80,271.89
 

 1943...... 67,549.02
 

 1945...... 54,051.33
 

 
 *466
 
 1946...... 46,997.29
 

 1948...... 32,248.00
 

 1950...... 16,600.48
 

 1947...... 39,731.63
 

 1949...... 24,539.86
 

 1951...... 8,422.91
 

 “Very sincerely yonrs,
 

 “Automatic Voting Machine Corporation;
 

 “Jamestown, N. Y.
 

 ‘ ‘Russell F. Gritfen. ’ ’
 

 While the words “rent” and “re-rent” are used in the foregoing contract it should he remembered that the board of county commissioners on November 5, 1937, did not authorize the board of elections to rent or re-rent voting machines. Referring now to the figures of the contract, by computation it will be revealed that the total amount over a fifteen-year period to be paid by the board of elections to the corporation amounts to $131,983.84, almost exactly the same sum that was to be paid on the contract of purchase previously rejected on September 10,1937, by the board of county commissioners. Here was a September contract
 
 to purchase
 
 100 voting machines for a total cost of $131,458.14 to be paid over a period of fifteen years turned into a November contract
 
 to rent
 
 100 voting machines for a period of fifteen years for practically the same sum, the title to the machines under the latter contract to be conveyed to the county at its option at the end of the fifteen years. That Contract “D” was regarded, in substance, as a contract of purchase was indicated by the testimony of Miss Brooks, one of the members of the Trumbull County Board of Elections. The following are some questions and answers by Miss Brooks on cross-examination:
 

 “Q. Apparently so, Miss .Brooks; now, you, as a member of the Trumbull couilty board of elections, understand that, under the last contract, of November 8, that each succeeding board of elections has the option to determine whether or not voting machines shall
 
 *467
 
 be used in the place of ballots, for that year? A. That is my understanding.
 

 “Q. And that, by the same token, each succeeding board of elections, of its own motion, that is in its own exercise of discretion, can elect to revert to the ballot system? A. They could.
 

 “Q. If they see fit; your answer is yes? A. They could, but they wouldn’t want to waste that much money.
 

 “Q. "What was that, Miss Brooks? A. I say, if they would, be very unwise, because look at the money they have paid out.
 

 “Q. "Would be a substantial loss to be sure, if they didn’t continue after having paid rental for a number of years, wouldn’t it? A. Absolutely.
 

 “Q. So that, the option of exercising its official discretion, as to whether it decided to use the machines in future years, or not, would be practically forestalled by that, practically obstacle [sic] of the great investment; isn’t that true?
 

 “Mr. Regan: You understand the question. A. It would. ’ ’
 

 On redirect examination Miss Brooks emphasized the element of purchase in her answer to the following question:
 

 “Q. And the county would also be in much worse shape if they didn’t have the option to purchase? A. Very much worse, very much worse; that was the point with us all along, to protect what we were paying in.”
 

 Where there is doubt about the character of an instrument the substance rather than the form will be considered.
 
 Steele
 
 v. State, 159 Ala., 9, 48 So., 673;
 
 Ducker
 
 v.
 
 Latonia Deposit
 
 Bank, 242 Ky., 374, 46 S. W. (2d), 493;
 
 Drovers’ Deposit National Bank
 
 v.
 
 Tichenor,
 
 156 Wis., 251, 145 N. W., 777.
 

 Not only was there no bond given to secure the performance of the contract, but there is not a single syl
 
 *468
 
 lable in the agreement that the voting machines will comply fully with the fourteen requirements set forth in Section 4785-161c, General Code. Although the particular make of voting machine must have been previously approved by the Secretary of State, nevertheless the bond must be given to insure the performance of the individual machines. The agreement stipulates that it is optional with the county to proceed after payment in any particular year. It is optional with the county after fourteen years to quit making annual payments and let the corporation keep the machines. For example, if after the county makes payments for fourteen years and the machines fail to operate efficiently, of what avail is the option to the county, if there be no bond by the defendant corporation? After fourteen-fifteenths of the purchase price (by whatever name it may be called) has been paid, if the machines fail, of what value is the option to the county to make the fifteenth payment and accept title, if there be no bond to guarantee performance? Nor is that all. In respect to performance, the contract violates not only the letter but also the spirit of the law. Instead of requiring the corporation by bond to guarantee the performance of the machines, paragraph four of the contract provides that “if any of said machines shall in any way become damaged during such time the county will pay for such repairs as shall be necessary to put said machines in perfect condition # Machines may become damaged by reason of faulty material or manufacture as well as by storage. Should the former happen, the county, under the provision just quoted, would not only be obligated for its so-called annual rental payment but might also be required to pay for the repairs to put the machines “in perfect condition.”
 

 Section 4785-161&, General Code, provides for the approval of a voting machine by the secretary of state before such machines may be purchased or used in any county. The first sentence of that section reads as fol
 
 *469
 
 lows: “No make of voting machine shall be purchased or used in any county of the state unless and until it shall have been approved by the secretary of state in the manner herein provided. ” It is significant that the word “rent” or “rented” is not found in the language used.
 

 The next section of the statute, Section 4785-161c, General Code, refers to the requirements, etc., of voting machines. The first sentence of that section reads as follows: “No voting machine shall be approved by the board of examiners or the secretary of state,
 
 or be purchased
 
 or used by any board of elections, unless it shall fulfill the following requirements * * *.” (Italics ours.) Here again neither the word “rent” nor “rental” is to be found. The last paragraph of this section is explicit and mandatory. It states: “Before any voting machine
 
 is purchased
 
 the person or- corporation owning or manufacturing such machine must give an adequate guarantee, in writing and
 
 post a satisfactory bond
 
 with the board of elections securing that such machines comply fully with the
 
 above requirements
 
 and will correctly, accurately and continuously register and record every vote cast.” (Italics ours.) What are the requirements referred to? There are fourteen such requirements covering every possible phase of voting by machines in order to guarantee the secrecy and sacredness of the ballot. If the language used does not require a bond to guarantee the compliance of the machines when purchased, then by the same token where a machine is rented it would not have to comply with any of the fourteen requirements.
 

 A voting machine, when used in an election, is an instrument to record the sovereign will of the people. It is an instrument designed for use at a particular time at a particular place. In order that all electors may have an equal chance to record their votes it is important that such machines operate, efficiently in the manner intended. It was in the furtherance of such a pur
 
 *470
 
 pose no doubt that the statute reads “that such machines comply fully” with all requirements and in addition thereto “will correctly, accurately and continuously register and record every vote cast. ’ ’ Here is an agreement made for voting machines, the first such contract for an entire county under the present law, at a total expenditure of $131,000 plus — an important contract — without bond, indeed without any “adequate guarantee” of any kind written into the contract itself. To contend that such an agreement covering a period of fifteen years, during which time the entire cost of the machines is to be paid, is a contract of rental on an
 
 experimental
 
 basis is to tax one’s credulity. If there is to be experimentation for a period of fifteen years at a total cost of $131,000 plus, there is that much added reason for compliance with the statute and a bond to guarantee that the machines will comply with all requirements provided by law.
 

 Much is said in the brief of appellant about the absence of bidding as required by statute and also about the failure of certification of funds by the county auditor as required by law. Where a contract like the one known as Exhibit “D” is so manifestly illegal and void under the statutes, examination of other claimed errors in respect to such agreement would be a work of supererogation.
 

 It is the conclusion of this court that the contract known as Exhibit “D ” is illegal and void. If it be considered as a rental contract it is void for the reason that the board of county commissioners did not and could not legally thus authorize the rental of voting machines for the entire county, under the facts of the instant case. ' On the other hand, if it be regarded as a purchase contract, it is illegal and void by virtue of noneompliance with Section 4785-161c requiring the defendant corporation to furnish a satisfactory bond.
 

 Contract “B” is also invalid for the reason that it was neither authorized nor executed according to law.
 
 *471
 
 It was a contract for county-wide nse of voting machines for a two-year period, not only without the bond required by law but without any authorization whatever of the board of county commissioners. In fact, that contract was executed in defiance of the board of county commissioners. That contract for voting machines for 1937 and 1938 was executed on September 14, 1937, only four days after the board of county commissioners had refused to authorize the purchase of voting machines for the entire county. The action of the board of county commissioners with reference to Contract “D” was at a later date, November 5.
 

 Contract “A” for the rental of fourteen voting machines and Contract “C” for one machine may be clearly regarded as for experimental purposes, and therefore valid. The judgment of the Court of Appeals will be reversed as to Contracts “D” and “B” and affirmed as to Contracts “A” and “O.”
 

 The judgment of the Court of Appeals will be reversed as indicated and final judgment rendered for the relator.
 

 Judgment reversed.
 

 Weygandt, C. J., Day and Zimmerman, JJ., concur.
 

 Williams, Matthias and Hart, JJ., dissent.