Myers, J.
 

 The question is whether this court will compel the director of public service to sign the proposed contract on behalf of the city of Nelsonville.
 

 The answer of the director of public service admits that provisions of the law governing certain contracts were not complied with in this case. The answer specifically avers that ‘ ‘ there is not attached to,1 nor is there intended to be attached to said contract, any certificate of the auditor of said city of Nelsonville, that the amount required to meet the payments under said contract has been lawfully appropriated for such purposes and in the treasury or in process of collection" to the credit of an appropriate fund free from any previous incumbrances.
 

 “This answering defendant further says that the said city of Nelsonville has not obtained the approval of the Bureau of Inspection and Supervision of Public Offices of the state of Ohio to the establishment of the light improvement fund provided for in the aforesaid Ordinance No. 900.”
 

 The director of public service refused to sign the
 
 *348
 
 contract.for the reason that he had been advised that it would be unlawful for the city of Nelsonville to enter into or perform the contract. Under the statutes the director of public service has certain discretion in making purchases for the municipality. Section 4328, General Code, gives him absolute discretion to make any contract or purchase supplies or material or provide labor for any work under the supervision of that department not involving more than $500. Where the amount exceeds $500 such expenditure shall first be authorized and directed by ordinance of council. In the instant case the city council authorized the director of public service to enter into the contract. The issue here is not whether the director of public service was authorized to make the contract. Neither are we called upon to construe the rights of parties to a contract already executed. The issue here is whether in a mandamus action the court will require Kouri, as director of public service, to sign the contract if there be reasonable doubt about its legality.
 

 In order to answer the foregoing question it is necessary to examine the nature and character of the proposed contract. While there are other claims of invalidity, the two principal contentions may be stated as follows: The first claim is that the contract though drawn in the form of a lease and denominated a lease is in reality a contract for purchase of the generating machinery in question. The second claim is that under the contract there would be a loan by the city of its financial credit to and in aid of the relator in violation of Section 6 of Article VIII of the Constitution of Ohio.
 

 We shall first inquire into the nature of the contract itself. In the instant case we are not required to determine all the respective rights of the parties under the contract for the reason that it is not an executed agreement.
 
 Burke
 
 v.
 
 Gormley,
 
 79 N. J. L., 259, 80 A., 483;
 
 Day
 
 v.
 
 Ryan,
 
 245 Pa., 154, 91 A., 633. It is unnec
 
 *349
 
 essary for the court to go further than to determine whether the contract is clearly and manifestly of the character claimed by the relator, that is, a lease. If there be reasonable doubt as to whether it is a lease this court will not require the director of public service to affix his signature thereto. Loosely drawn instruments furnish enough litigation without any encouragement from this court by way of compelling and forcing a public official to sign a contract of dubious construction. In
 
 State, ex rel. Fisher,
 
 v.
 
 Sherman et al., Bd. of Elections,
 
 135 Ohio St., 458, 21 N. E. (2d), 467, this court had under consideration a similar contract. In that case the board of elections of Trumbull county entered into a so-called
 
 contract to rent
 
 100 voting machines for a period of 15 years for practically the same total sum for which it could have purchased the machines outright on an installment basis covering the same period of time. That contract further provided that if and when the county shall have paid the total
 
 rental
 
 “no further rental need be paid and the company will at the option of the county give it a bill of sale for said machines.” This court held in that case that the contract in question in reality was one for purchase and not for rental. This court there stated that where there is doubt about the character of an instrument the substance rather than the form will prevail. See, also,
 
 Steele
 
 v.
 
 State,
 
 159 Ala., 9, 48 So., 673;
 
 Ducker
 
 v.
 
 Latonia Deposit Bank,
 
 242 Ky., 374, 46 S. W. (2d), 493;
 
 Drovers Deposit National Bank
 
 v.
 
 Tichenor,
 
 156 Wis., 251, 145 N. W., 777.
 

 The contract here is similar to that in the
 
 Fisher case.
 
 Although denominated a lease, it has certain definite earmarks of a contract of purchase. The total amount of rental to be paid for the generating machinery over a period of 38 months is $27,050 to be paid as follows: $2,500 on arrival of the equipment at Nelsonville>for the first month’s rental; $2,500 thirty days thereafter for the second month’s rental; $612.50
 
 *350
 
 for each of the succeeding 36 monthly periods. It will be observed that within the comparatively short period of three years and two months the city under the contract would be required to pay the sum of $27,050 in so-called rental for the same generating machinery which Mr. Snodgrass, the relator’s representative, testified the city could have purchased outright for an approximate cash price of $23,000. In 1936, two years before, the relator had offered to sell to the city practically the same equipment for a still lower sum, $19,476.
 

 "We now call attention to paragraph “H” of the contract wherein it is stated that “upon the termination of this lease in any manner, the city shall
 
 upon demand
 
 turn the leased property over to the company at the city electric light plant.” (Italics ours.) The two words “upon demand” are rather significant when it is remembered that the testimony of various witnesses, including Mr. Kouri, the director of public service, was to the effect that when this electrical generating machinery would be installed it would to all intents and purposes become an integral part of the municipal light plant.
 

 The evidence is convincing that the useful life of such equipment is from fifteen to twenty years. Mr. Snodgrass, who had charge of sales activities for relator, testified■ that “if properly maintained the life should be a minimum of fifteen years, which can be very considerably increased with proper care and attention.” Here then was the sales representative with twenty years experience with relator, the Skinner Engine Company, the man who conducted the negotiations with the city of Nelsonville, testifying that the minimum useful life of such equipment should be fifteen years and with proper care considerably more. This, coupled with the testimony of Kouri, the director of public service, that discussion was had with relator about the possibility of acquiring the equipment after the thirty-eight month period, leaves the impression
 
 *351
 
 that after the total payment of the $27,050 over a thirty-eight month period the equipment in all probability would remain in the plant. Here was machinery that would and could usefully serve the city for more than fifteen years. It could have been purchased outright for $23,000. Is it reasonable to presume that responsible city officials would agree to pay $27,050 for a little more than three years use of the machinery and then at the end of thirty-eight months not have anything left?
 

 The proposed contract is of such a nature as to render the entire transaction doubtful in character. The director of public service had ample reason to doubt the legality of the document which he was requested to sign. Where a public official, clothed with certain discretion, has reasonable grounds to doubt the validity of a contract and refuses to sign it, this court will not by mandamus compel him to do so, unless the right of the relator thereto is manifestly clear. The contract being of doubtful validity, a writ of mandamus will not issue to compel its1 being signed and executed by the director of public service of the city of Nelsonville. 25 Ohio Jurisprudence, 997, Section 23.
 

 Determination of the foregoing* question being dis-positive of the entire case it becomes unnecessary to decide whether the contract contravenes Section 6 of Article VIII of the Constitution.
 

 Writ denied.
 

 Weygandt, C. J., Day, Matthias and Hart, JJ., concur.
 

 Williams, J., concurs in paragraph one of the syllabus and in the judgment.