THE STATE, EX REL. WILLIAMS, *v.* BROWN, SECY. OF STATE, ET AL.

(No. 77-1038—Decided October 13, 1977.)

Messrs. *Green, Schiavoni, Murphy & Haines* and *Mr. Eugene Green,* for relator.

Messrs. *Crabbe, Brown, Jones, Potts & Schmidt, Mr. William L. Schmidt* and *Mr. Ira O. Kane,* for respondent.

Messrs. *Vorys, Sater, Seymour & Pease, Mr. Robert E. Leach* and *Mr. Duke W. Thomas,* for intervenors.

*Per Curiam.* Relator, in her memorandum, urges for our consideration six propositions of law, allegedly supportive of her demand for the issuance of a writ of mandamus or, in the alternative, a writ of prohibition, as follows:

"(1) Relator's complaint states a claim for relief over which this court has jurisdiction;

"(2) The lack of clarity and the ambiguity in the text of the proposed amendment to Section 1, Article V of the Ohio Constitution are fatally defective and preclude consideration of the text as an amendment to the Ohio Constitution;

"(3) The summaries on the initiative petition and the ballot do not constitute fair and truthful summaries and do not cure the fatal defects in the language of the proposed amendment;

"(4) The question and issues ballot containing the proposed amendment is constitutionally defective because a summary is juxtaposed with the text itself, because the summary is not a true and accurate explanation of the proposed amendment, because the summary differs from the summary on the initiative petition, and because the ballot is defective in form;

"(5) To permit the election to go forward, under existing circumstances, would deprive the electorate of the right to notice required by the well established requirements of due process of law; [and]

"(6) Estoppel and laches are frivilous defenses on the facts of this cause."

These preceding arguments present three issues ·for determination by this court. However, an essential preface to their consideration is comprehension of the nature of the remedies sought by relator. Mandamus and prohibition are extraordinary remedies, to be issued with great caution and discretion and only when the way is clear. *State, ex rel. Kriss,* v. *Richards* (1921), 102 Ohio St. 455; *State, ex rel. Skinner Engine Co.,* v. *Kouri* (1940), 136 Ohio St. 343. The purpose of mandamus is to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station. *State, ex rel. Riley Constr. Co.,* v. *East Liverpool Bd. of Edn.* (1967), 10 Ohio St. 2d 25. The function of prohibition is to prevent a court or officer from exercising judicial or quasi-judicial power unauthorized by law. *State, ex rel. Lehmann,* v. *Cmich* (1970), 23 Ohio St. 2d 11.

Relator first assails the initiative petition, asserting in the third proposition of law[1] that the summary on the initiative petition is not a summary at all, and that, if it is a summary, it is not fair and truthful as required by R. C. 3519.01.[2] Specifically, relator contends that the summary on the initiative petition is defective in that: (1) the summary is longer by one word than the text of the proposed amendment; (2) the summary does not explain the character and effect of the proposed amendment; and (3) it does nothing to resolve the ambiguity of the proposed amendment, requiring an elector to have voted at least once "during any period of four consecutive years."

Section 1a, Article II, Ohio Constitution, states, in relevant part:

"When a petition signed by the aforesaid required number of electors, shall have been filed with the Secretary of State, and verified as herein provided, proposing an

---

[1]This argument is also asserted in relator's fifth proposition of law.

[2]Apparently, relator is referring to R. C. 3519.01, despite the fact that it is twice cited as R. C. 3319.01 in this proposition in her brief.

amendment to the Constitution, the full text of which shall have been set forth in such petition, the Secretary of State *shall submit for the approval or rejection of the electors, the proposed amendment * * *."* (Emphasis added.)

Additionally, in *State, ex rel. O'Grady,* v. *Brown* (1976), 48 Ohio St. 2d 17, this court referred to Section 1g, Article II, Ohio Constitution, wherein it provides that the Secretary of State "shall cause to be placed upon the ballots" any proposed amendments to the Constitution which are presented by the initiative petition, in refusing to prohibit the Secretary of State from placing on the ballot four initiated proposals to amend the Constitution. The court explained, at page 20:

"Although the '* * * Secretary of State necessarily will act in a quasi-judicial capacity in determining the sufficiency of the petition' (*State, ex rel. Patton,* v. *Myers* [1933], 127 Ohio St. 95, 98), the placing of the issues on the ballots is ministerial in nature and not quasi-judicial," and concluded:

"* * * [T]he placing of the issues in question on the ballots * * * do[es] not constitute the exercise of quasi-judicial power by the Secretary of State. Therefore, there is 'no showing that the acts sought to be prohibited constitute a usurpation of quasi-judicial power' (*State, ex rel. Schwartz,* v. *Brown, supra* [(1972), 32 Ohio St. 2d 1]), and prohibition does not lie."

The Ohio Constitution imposes certain ministerial duties upon the respondent with respect to the initiative petitions. Relator has failed to show, in the instant cause, that the respondent is proceeding other than in the performance of such duties, that he has abused his discretion or that the acts sought to be prohibited constitute a usurpation of quasi-judicial power. Absent this requisite demonstration, the writs of mandamus and prohibition will not lie. *State, ex rel. Taylor,* v. *Glasser* (1977), 50 Ohio St. 2d 165.

Secondly, relator contends that the lack of clarity and the ambiguity in the text of the proposed amendment are fatally defective and preclude its consideration, and that

neither the summary on the initiative petition nor the language on the ballot alleviates this fatal flaw. Consideration of the alleged flaws must be preceded by a showing that respondent is acting other than in the performance of his duties and, or, attempting a usurpation of quasi-judicial power. There is no allegation by relator that any of the procedural steps required of petitioners were not complied with. Furthermore, relator has cited no authority which would require the respondent to reject a petition for an amendment to the Constitution because the language was ambiguous. To the contrary, we have previously demonstrated the ministerial duty imposed upon the Secretary of State to place the proposed amendment on the ballot by Sections 1a and 1g, Article II, Ohio Constitution.[3] Nor may this court consider, as urged by relator, the constitutional validity of the proposed amendment. *Pfeifer* v. *Graves* (1913), 88 Ohio St. 473; *Weinland* v. *Fulton* (1918), 99 Ohio St. 10; *State, ex rel. Greenlund,* v. *Fulton* (1919), 99 Ohio St. 168; and *Cincinnati* v. *Hillenbrand* (1921), 103 Ohio St. 286.

Certainly, the reasoning of Judge Wilkin, in *Pfeifer* v. *Graves, supra,* has continued applicability to the resolution of the present issue and is stated, at pages 487 and 488:

"There is another indisputable and imperative reason why the remedy they invoke must be denied. We can not intervene in the process of legislation and enjoin the proceedings of the legislative department of the state. That department is free to act upon its own judgment of its constitutional powers. We have not even advisory jurisdiction to render opinions upon mooted questions about con-

---

[3]The statute also clearly expresses the ministerial duty of the Secretary of State to place the proposed amendment on the ballot. R. C. 3519.16 reads, in pertinent part:

"The number of signatures in both the original and supplementary petitions, properly verified, shall be used by the Secretary of State in determining the total number of signatures to the petition which he shall record and announce. If they are sufficient, then such amendment * * * *shall be placed on the ballot* as required by law." (Emphasis added.)

stitutional limitations of the legislative function, and we will not presume to control the exercise of that function of government by the General Assembly, much less by the people, in whom all the power abides. The legislature, having delegated authority, prescribed and limited by the Constitution, may exceed its authority by promulgating a law in conflict with the Constitution. In a clear case of the latter sort, where the void law is about to be enforced against a citizen to his prejudice, we may enjoin execution of the law, for the protection of the rights of person or property guaranteed by the Constitution. This is not such a case; no private rights of person or property are in jeopardy, and there is no law or semblance thereof complained of. We are simply asked to regulate the affairs of another branch of government, in deference to the general welfare, in a matter quite outside and independent of our authority. We are asked to prevent the people from exercising the initiative, upon a quizzical interpretation of a single word in their own letter of authority to their Secretary of State. We can not enjoin the sovereign state of Ohio where the people have not in their Constitution, clearly beyond reasonable doubt, limited the exercise of their power to legislate directly by the initiative. Therefore, the writ must be refused."

Lastly, relator asserts, in her third and fourth propositions of law, that the question and issues ballot prescribed by the Secretary of State is constitutionally defective. A modicum of factors are set forth, allegedly evincing certain fatal errors in the question and issues ballot: (1) A summary is juxtaposed with the text of the proposed amendment on the ballot; (2) the summary is not a true and accurate explanation of the proposed amendment because it differs from the summary on the initiative petition and (3) the ballot is defective because the words "Be It Resolved by the People of the State of Ohio" do not appear on the ballot. Respondent denies the existence of a summary on the ballot, arguing that it is a ballot title and citing Section 1g, Article II, Ohio Constitution, as authority for its inclusion on the

ballot.⁴ Adhering to his classification, respondent states that the Secretary of State is not mandated in formulating the ballot title to use the language of the summary on the initiative petition. As to relator's last contention, respondent implies that the specific language "Be It Resolved by the People of the State of Ohio" is only required to appear on the initiative petition.

Assuming, *arguendo*, relator's allegation of errors on the ballot is correct, the determinative issue presented to this court is whether the cumulative effect of these technical defects is harmless or fatal to the validity of the ballot.

This court has had the occasion in the past to address the issue of the fatality of errors on the ballot. The court, in *Thrailkill* v. *Smith* (1922), 106 Ohio St. 1, 11, stated:

"Nothing contained in this opinion should be construed to lend encouragement to indirection or any effort to deceive or mislead the voters, and if this court should be convinced that the matter printed upon the ballot * * * would in fact *mislead*, or *deceive*, or *defraud* the voters, we would not hesitate to enjoin the submission." (Emphasis added.)

In *State, ex rel. Foreman*, v. *Brown* (1967), 10 Ohio St. 2d 139, 151, the court wrote:

"There is nothing to indicate that any of the statements in or omissions from the 'condensed text,' that are now being complained about, were caused by *fraud*; and there is nothing now to indicate that *they will interfere with a full and fair expression of the voters' choice.* In such an instance, they should not prevent submission of * * * [the issue] to the voters." (Emphasis added.)

The alleged errors do not lend to misleading, deceiving or defrauding the voters on the instant issue. The ballot contains the actual text of the proposed amendment, not merely a condensed text. Thus, the concern expressed in

---

⁴Section 1g, Article II, Ohio Constitution, relied upon by respondent, reads:

"Unless otherwise provided by law, the Secretary of State shall cause to be placed upon the ballots, the title of any such law, or proposed amendment to the Constitution, to be submitted."

*State, ex rel. Minus,* v. *Brown* (1972), 30 Ohio St. 2d 75, that the voters know what they are being asked to vote upon, is not present. Also, there is no allegation that the publication provision of the Constitution,[5] not complied with in *Minus* v. *Brown, supra,* will not be adhered to. Thus, another source of information concerning this proposed amendment will be provided for the enlightenment of the voters. Nor can the language in the present caption on the ballot be viewed as argumentative, misleading and coercive. See *Beck* v. *Cincinnati* (1955), 162 Ohio St. 473.

The people having expressly reserved to themselves the right of initiative, it is not the function of this court to interfere with that right and disenfranchise the voters on the basis of some mere technical irregularities which will not interfere with that right and disenfranchise the voters on the choice.

Accordingly, relator's writs of mandamus and prohibition are denied.

*Writs denied.*

O'NEILL, C. J., HERBERT, W. BROWN, P. BROWN and LOCHER, JJ., concur.

CELEBREZZE and SWEENEY, JJ., dissent.

---

[5]Section 1g, Article II, Ohio Constitution, states, in relevant part:

"* * * The law, or proposed law, or proposed amendment to the Constitution, together with the arguments and explanations, not exceeding a total of three hundred words for each, and also the arguments and explanations, not exceeding a total of three hundred words against each, shall be published once a week for five consecutive weeks preceding the election, in at least one newspaper of general circulation in each county of the state, where a newspaper is published."