THE STATE, EX REL. CARTER ET AL., *v.*
CELEBREZZE, JR., SECY. OF STATE.

[Cite as State, ex rel. Carter, v. Celebrezze, Jr. (1980),
63 Ohio St. 2d 326.]

(No. 80-1136—Decided September 23, 1980.)

---

*Messrs. Schneider, Prohaska & Sams, Mr. William H. Schneider, Mr. J. Raymond Prohaska, Messrs. Porter, Wright, Morris & Arthur* and *Mr. Thomas M. Herbert,* for relators.

*Mr. William J. Brown,* attorney general, *Mr. Philip R. Moots* and *Mr. Robert M. Weinberger,* for respondent.

*Per Curiam.* The determinative issue before this court is whether the two divergent sets of part-petitions represent different proposed amendments, in which case neither has sufficient signatures to qualify for acceptance by respondent, or whether they should be considered as one, thus containing in excess of the number of signatures required.

This court has stated that " * * * the terms of a proposed constitutional amendment are determined by reference to the text of such proposal as contained on the initiative petition and part-petitions signed by the requisite number of electors." *State, ex rel. Schwartz,* v. *Brown* (1972), 32 Ohio St. 2d 4, paragraph two of the syllabus.

Relators contend that the identicalness of part-petitions is not required, that the irregularities herein are superficial, and that there was no intent to remove the deleted language from the proposed amendment to the Constitution. This court finds no authorization in the Constitution or in the statutes for respondent to ignore the nondisclosure of presently existing language from the proposed amendment which is intended to continue in effect, or for respondent to assume that those electors who signed the part-petitions with the omitted language knew such language to be there or to be superficial in nature.

The statements of Judge Johnson in *State, ex rel. Greenlund,* v. *Fulton* (1919), 99 Ohio St. 168, at pages 179-180, are applicable herein:

"Then there is the use of the word 'amendment' as related to some particular article or some section of the constitution, and it is then used to indicate an addition to, the striking out, or some change in that particular section. * * * [I]t may be essential for the elector to have before him the section which is proposed to be added to, or subtracted from. If he is to vote intelligently, he must have this knowledge. Otherwise in many instances he would be required to vote in the dark. But when the particular section, with the additions or subtractions shown therein, is before the elector, this completed result becomes the amendment upon which he expresses his choice."

Relators maintain further that respondent was procedurally incorrect in not forwarding the part-petitions to the various county boards of elections and then advising relators of

the insufficiency of signatures. Relators rely principally upon *State, ex rel. McCrehen,* v. *Brown* (1923), 108 Ohio St. 454, which holds that Section 1*g*, Article II of the Ohio Constitution, confers no power upon respondent to determine the sufficiency of referendum (and, presumably, initiative) petitions.

However, under Section 1*a* of Article II, the verification process provided for in Section 1*g* is not operative until "***a petition signed by***[ten percentum of the electors] shall have been filed with the secretary***." If no petition bearing the requisite number of electors' signatures is presented, *i.e.,* if the part-petitions represent two different proposed amendments, respondent has no duties under Section 1*g*. Since ten percentum of the electorate have not signed either set of part-petitions herein, the part-petitions do not qualify for acceptance by respondent. Accordingly, the writ of mandamus is denied.

*Writ denied.*

CELEBREZZE, C. J., W. BROWN, SWEENEY and LOCHER, JJ., concur.

P. BROWN, HOLMES and DOWD, JJ., dissent.

WILLIAM B. BROWN, J., concurring. While my heart is inexorably with the right of the initiators to get on the ballot and to give the voters of Ohio the choice to amend the Constitution, my head must reckon with the consequences of doing so.

If we were to rule that, pursuant to R. C. 3519.14, the Secretary of State abused his discretion by not accepting for filing the part-petitions at issue, we would also be duty bound to delineate a standard which not only governed our present ruling, but which would also apply in future cases. In my opinion, through its precedential effect, the granting of a writ herein would place both the office of the Secretary of State and this court in a most difficult predicament.

Relators, and Justice Dowd in his dissent, essentially argue that, absent fraud, the Secretary of State should, and has the discretionary authority to, overlook superficial or non-germane or insubstantial errors in part-petitions. I submit that such standards are nothing more than vacuous

declarations that the Secretary of State should ignore some errors in part-petitions, but not others.

Assuming for the sake of argument that a majority of this court thought that the omissions were superficial, non-germane or insignificant, or that the proposed amendment was too important to keep from the voters (especially given this court's tradition of liberality in connection with the initiative process), it would be quite easy for us to declare that "substance over form" was the rationale guiding our issuance of a writ. Even if such a ruling were defensible on the facts, the precedential effect of such a disposition both for the office of the Secretary of State and for this court would be unfortunate.

Given such a precedent, neither the Secretary of State, initiators nor other interested citizens would be able to ascertain the contours of the secretary's discretionary authority to ignore some errors in part-petitions, but not others. To prevent allegations of abuse of office, partisanship and the like, it is likely that a prudent Secretary of State would renounce such discretionary authority and interpret the law quite strictly.

The secretary's renunciation of his discretionary authority, however, would merely shift the difficulties to this court, since disappointed initiators would certainly bring to us original actions in mandamus, citing our decision in the instant cause as precedent. Like the Secretary of State, we would have great difficulty ascertaining the extent of his lawful discretion.

Rather than to engraft into the law a precedent which would require this court to decide such cases in partisan circumstances without a guiding standard, I prefer to impose upon initiators a strict though easily accomplishable requirement that can be uniformly and consistently applied. Hard cases, indeed, often make bad law. Herein, however, I must opt for the hard decision rather than the bad law. In view of these circumstances, personal exhaustive review, and my own conscience, I can only concur in the foregoing majority opinion.

Dowd, J., dissenting. I respectfully dissent from the dismissal of the petition in mandamus of the relators by the majority of this court.

The majority, by its decision today, accomplishes the elevation of form over substance, and serves to allow the respondent Secretary of State to make a decision which should only be made by the voters of this state. See *State, ex rel. Williams,* v. *Brown* (1977), 52 Ohio St. 2d 13, 19-20. To hold that this proposal should fall, not on its merits, but on a printer's error without significance, is unwarranted.

This court has recognized that the responsibilities of the Secretary of State under Sections 1*a* and 1*g* of Article II of the Constitution of Ohio can not be clearly demarcated and that occasions will arise when his discretionary power must be exercised. See *State, ex rel. Hunt,* v. *Hildebrant* (1915), 93 Ohio St. 1, 8-9. However, the overall import of the constitutional language is that the right of initiative should be carefully safeguarded. This is directly reflected by the language of Section 1*g* of Article II, which provides, in part, that, "[t]he foregoing provisions***[relating to the initiative process] shall be self-executing***. Laws may be passed to facilitate their operation, but in no way limiting or restricting either such provisions or the powers herein reserved."

It is this constitutional directive which prompted this court to state in *Thrailkill* v. *Smith* (1922), 106 Ohio St. 1, 5, that:

"***Inasmuch as the constitutional-framers provided that laws may be passed to facilitate the operation of the constitutional provisions, it is the plain duty of the courts in construing the constitutional provisions to give them such construction as will facilitate rather than obstruct their operation."

While the Constitution is specific with regard to certain particulars of the initiative process, it does not provide for the exact form of proposed constitutional amendments. The common-sense criterion which this court must assume in reviewing an amendment proposed by the initiative process is whether a petitioner could have been misled by the omission in the proposed amendment. In this case, the omitted language is not particularly germane to the proposed amendment. Its absence or presence would not affect the reasoning of a rational elector in deciding whether the proposed apportionment plan should be a part of the state Constitution.

In the case of *State, ex rel. Hunt,* v. *Hildebrant, supra,* the court, in speaking of Section 1*g* of Article II, stated at page 9:

"***Nor should the intent and purpose of any provision of the state constitution be defeated by any technical construction of its terms. On the contrary, if the language is sufficiently plain to disclose that intent and purpose, then such construction must obtain as will give full force and effect thereto, even though it be attended with some difficulties."

These statements have direct applicability to this case. We deal here with an inconsistency of the smallest degree, one which can have no effect, either legally or practically. Indeed, both petition forms carried the full text of the proposed amendment to the Constitution; on each of the petition forms, all language to be added was present, and all language to be modified or deleted was present.

Certainly, the Secretary of State would be justified in rejecting part-petitions which contain an error of substance, of constitutional magnitude, *State, ex rel. Herbert,* v. *Mitchell* (1939), 136 Ohio St. 1, or part-petitions where there was evidence of fraud or collusion in the circulation of the petitions. Here, however, the error is without substance, there has been no attempt to mislead, either consciously or unconsciously, the voters who expressed their support for the initiative petition; and the part-petitions do comply with the constitutional mandate that they contain the full text of the proposed amendment.

Furthermore, this court has intimated that language in an amendment proposed through the initiative process which is ineffectual as surplusage will be disregarded. *State, ex rel. Schwartz,* v. *Brown* (1972), 32 Ohio St. 2d 4, 9-10.

In this case, respondent had before him part-petitions which were signed by the requisite number of electors.

I would vote to grant the relief requested by the relators on their complaint in mandamus.

P. BROWN and HOLMES, JJ., concur in the foregoing dissenting opinion.