THE STATE EX REL. VOTERS FIRST ET AL. *v.* OHIO BALLOT BOARD ET AL.

[Cite as *State ex rel. Voters First v. Ohio Ballot Bd.,*

133 Ohio St.3d 257, 2012-Ohio-4149.]

*Mandamus—Elections—Initiative—Proposed constitutional amendment— Redistricting—Ballot language—Ohio Constitution, Article XVI, Section 1—R.C. 3505.062(B)—Condensed text describing amendment approved by Ohio Ballot Board is invalid—Material omissions and factual inaccuracy—Ballot language fails to properly identify substance of amendment—Writ granted.*

(No. 2012-1443—Submitted September 4, 2012—Decided September 12, 2012.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} This is an original action pursuant to the Ohio Constitution, Article XVI, Section 1 for a writ of mandamus compelling respondent Ohio Ballot Board, which includes respondent Secretary of State Jon Husted, to reconvene forthwith to replace ballot language previously adopted with ballot language that properly describes the proposed constitutional amendment. Because relators have established their entitlement to the requested extraordinary relief, we grant the writ.

**Facts**

*Relators' Proposed Amendment*

{¶ 2} Relator Voters First is an unincorporated association of individuals responsible for the supervision, management, and organization of the signature-gathering effort to certify a proposed constitutional amendment to the November 6, 2012 general-election ballot and to support its passage by electors. The

remaining relators are Ohio resident-electors who comprise the committee designated to represent the petitioners of the proposed amendment pursuant to R.C. 3519.02.

{¶ 3} The proposed amendment would amend the Ohio Constitution, Article XI, Sections 1, 3, 4, 6, 7, 9, 10, and 13, repeal Article XI, Sections 8 and 14, and adopt Article XI, Section 16, to set forth new constitutional standards and requirements to establish federal congressional and state legislative district lines for Ohio. The proposed amendment would establish the Ohio Citizens Independent Redistricting Commission, consisting of 12 members, to be chosen as follows. First, eligible persons would apply to the secretary of state for membership on the commission. Proposed Article XI, Section 1(C)(4). The chief justice of the Supreme Court would select by lot a panel of eight court of appeals judges, no more than four of whom may be of the same political party. Proposed Article XI, Section 1(C)(3). The panel would choose 42 persons from the applicants eligible for membership on the commission, consisting of three different 14-person pools, two from each of the two largest political parties and one from neither party. Proposed Article XI, Section 1(C)(5). The speaker of the Ohio House of Representatives and the highest ranking member of the house who is not of the same political party as the speaker would then be permitted to eliminate up to three persons from each of the three pools before the panel of judges selects nine commission members by lot. Proposed Article XI, Sections 1(C)(6) and (7). These nine members will then select from the remaining pool three more members for a total of 12. Proposed Article XI, Section 1(C)(7).

{¶ 4} In addition, the General Assembly is required to "make appropriations necessary to adequately fund the activities of the Commission including, but not limited to, funds to compensate Commission members; pay for necessary staff, office space, experts, legal counsel and the independent auditor;

and purchase necessary supplies and equipment." Proposed Article XI, Section 1(D).

{¶ 5} Further, the proposed amendment provides that the commission's meetings shall be open to the public, that its records, communications, and draft plans are generally public records, and that the commission shall provide a reasonable opportunity for the public to submit proposed redistricting plans for the commission's consideration. Proposed Article XI, Sections 1(E), (F), and (H).

{¶ 6} The commission shall establish the new legislative district boundaries by October 1 of the year before elections are to be held in the new districts. If the commission fails to act by that date, an action may be initiated in the Supreme Court of Ohio to adopt district boundaries, and this court shall select from the plans submitted to or considered by the commission and adopt the plan that most closely meets the applicable requirements. Proposed Article XI, Section 1(K).

{¶ 7} If the proposed amendment is approved by the electorate, the commission will establish new district boundaries for Ohio's state legislative and federal congressional districts. Those new boundaries will be used in the next regularly scheduled state and federal elections held more than a year after the adoption of the amendment. These boundaries, or the ones selected by this court, shall not be changed until the ensuing federal decennial census unless declared invalid by this court or a federal court. Proposed Article XI, Section 6.

{¶ 8} Under the proposed constitutional amendment, the commission shall adopt the redistricting plan that, in its judgment, most closely meets the specified factors of community preservation, competitiveness, representational fairness, and compactness, without violating applicable state and federal constitutional provisions, federal statutory provisions, and the requirement that each district shall be composed of contiguous territory. Proposed Article XI, Section 7(A), (B), and (C). In addition, the commission must consider and make

publicly available with each proposed redistricting plan a report that identifies for each district the boundaries, population, racial and ethnic composition, compactness measure, governmental units that are divided, and political party indexes. Proposed Article XI, Section 7(D). No plan shall be drawn or adopted with the intent to favor or disfavor a political party, incumbent, or potential candidate. Proposed Article XI, Section 7(E). The legislative districts cannot contain a population less than 98 percent or greater than 102 percent of the ratio of representation. Proposed Article XI, Sections 3 and 4.

{¶ 9} Finally, the proposed amendment vests exclusive, original jurisdiction in the Supreme Court of Ohio in all cases arising under Article XI, requires the commission to establish new boundaries should any districts be determined to be invalid either by this court or a federal court, and, when necessary, requires courts to establish district boundaries by selecting the plan that most closely meets the pertinent requirements among the plans submitted to and considered by the commission. Proposed Article XI, Section 13(A), (B), and (C).

*Respondents' Actions on Relators' Proposed*

*Constitutional Amendment*

{¶ 10} On August 6, 2012, respondent Secretary of State Husted certified that relators' petition proposing the amendment contained sufficient valid signatures to satisfy the requirements of Article II, Sections 1a and 1g of the Ohio Constitution and stated that the proposed amendment would be submitted to the electors of the state for their approval or rejection at the November 6, 2012 general election. The secretary later announced that a meeting of respondent Ohio Ballot Board would be held to consider and certify ballot language for the proposed amendment.

{¶ 11} On August 15, the ballot board met to certify ballot language for the proposed amendment. Relators and Protect Your Vote Ohio, a committee organized to oppose the proposed amendment, appeared and offered competing

4

versions of proposed ballot language. The secretary of state's staff also submitted its version of proposed ballot language. Protect Your Vote Ohio ultimately withdrew its proposal and supported the secretary's proposed ballot language, with additional suggested language, including a statement that the proposed amendment would change the standards and requirements for drawing state legislative and federal congressional districts. During the meeting, the secretary of state stated that he "would have liked to have placed the entire text as it was written by the proponents on the ballot," but he did not do so because "it would have doubled the cost for someone to send a mail-in ballot back and it would have doubled the cost of sending the initial ballot out to the voter." Instead, the secretary asked his staff to draft "summary language that was brief and would do the best job possible of neutrally or generically describing the issue."

{¶ 12} After a couple of modifications, including adding Protect Your Vote Ohio's suggested statement that the proposed amendment would "[c]hange the standards and requirements in the Constitution for drawing legislative and congressional districts," the board voted 3 to 2 to adopt language prepared by the secretary of state's staff.

{¶ 13} The board's approved ballot language provides:


**Issue 2**
**[TITLE HERE]**
**Proposed Constitutional Amendment**
**Proposed by Initiative Petition**
**To add and repeal language in Sections 1, 3, 4, 6, 7, 9 and 13**
**of Article XI,**
**repeal Sections 8 and 14 of Article XI, and add a new Section**
**16 to Article XI of the Constitution of the State of Ohio**
A majority yes vote is necessary for the amendment to pass.

The proposed amendment would:

1. Remove the authority of elected representatives and grant new authority to appointed officials to establish congressional and state legislative district lines.

2. Create a state funded commission of appointed officials from a limited pool of applicants to replace the aforementioned. The Commission will consist of 12 members as follows: four affiliated with the largest political party, four affiliated with the second largest political party and four not affiliated with either of the two largest political parties. Affirmative votes of 7 of 12 members are needed to select a plan.

3. Require new legislative and congressional districts be immediately established by the Commission to replace the most recent districts adopted by elected representatives, which districts shall not be challenged except by court order until the next federal decennial census and apportionment. In the event the Commission is not able to determine a plan by October 1, the Ohio Supreme Court would need to adopt a plan from all the plans submitted to the Commission.

4. Change the standards and requirements in the Constitution for drawing legislative and congressional districts.

5. Mandate the General Assembly to appropriate all funds as determined by the Commission including, but not be limited to, compensating:

1. Staff

2. Consultants

3. Legal counsel

4. Commission members

If approved, the amendment will be effective thirty days after the election.

SHALL THE AMENDMENT BE

APPROVED?

YES

NO

(Boldface sic.)

*Original Action*

{¶ 14} Eight days after the ballot board's approval of the secretary's proposed language, on August 23, relators filed this original action pursuant to the Ohio Constitution, Article XVI, Section 1 for a writ of mandamus to find that the approved ballot language is invalid and to compel the board and the secretary of state to reconvene forthwith to adopt ballot language that properly describes the proposed constitutional amendment for the November 6, 2012 general election. Respondents filed an answer, and the parties submitted evidence and briefs pursuant to the accelerated schedule for expedited-election cases in S.Ct.Prac.R. 10.9.

{¶ 15} This cause is now before the court for our consideration.

**Analysis**

*Laches*

{¶ 16} We initially reject the ballot board's and the secretary of state's claim that this action is barred by laches. "Laches may bar an action for relief in an election-related matter if the persons seeking this relief fail to act with the requisite diligence." *Smith v. Scioto Cty. Bd. of Elections*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131, ¶ 11.

{¶ 17} Relators' filing of this action eight days after the August 15 ballot board decision approving the language they challenge was reasonable under the

circumstances. Relators needed time to research and prepare their legal challenge to ballot language that they had not seen before the August 15 hearing.

{¶ 18} In addition, relators filed this action in advance of the constitutional deadline of 64 days before the election. *See* Ohio Constitution, Article XVI, Section 1.

{¶ 19} Moreover, the ballot board's and the secretary of state's ability to prepare and defend against relators' mandamus claim has not been affected by relators' minimal delay. *See State ex rel. Owens v. Brunner*, 125 Ohio St.3d 130, 2010-Ohio-1374, 926 N.E.2d 617, ¶ 20. And respondents' evidence does not establish that any absentee-ballot deadline would have passed by the time briefing in this case was completed. Nor is there evidence that the brief delay in filing this case was intentionally engineered by relators to obtain a strategic advantage. *Id.* at ¶ 22.

{¶ 20} Finally, the cases cited by the ballot board and the secretary of state do not dictate a finding of laches here. They are either cases in which the court held that laches did not bar the writ action, *see Owens*, *State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, and *State ex rel. Willke v. Taft*, 107 Ohio St.3d 1, 2005-Ohio-5303, 836 N.E.2d 536, or involved significantly lengthier delays that resulted in prejudice, *see, e.g., Smith*, 123 Ohio St.3d 467, 2009-Ohio-5866, 918 N.E.2d 131 (laches barred postelection challenge to allegedly misleading petition and ballot language for special election on a proposed amendment to the city charter, where challengers were aware of or should have been aware of the ballot language long before the special election); *State ex rel. Fishman v. Lucas Cty. Bd. of Elections*, 116 Ohio St.3d 19, 2007-Ohio-5583, 876 N.E.2d 517 (laches barred prohibition claim to prevent placement of candidate's name on ballot when relator filed protest 16 days after candidate's nominating petition was filed and filed expedited election case 38 days after board denied his protest).

{¶ 21} Therefore, laches does not bar our consideration of relators' mandamus claim. This result is consistent with the "fundamental tenet of judicial review in Ohio"—"that courts should decide cases on their merits." *State ex rel. Becker v. Eastlake*, 93 Ohio St.3d 502, 505, 756 N.E.2d 1228 (2001).

*Mandamus*

{¶ 22} Relators request a writ of mandamus invalidating the ballot language adopted by the ballot board, including the secretary of state, and to compel the board to reconvene forthwith to adopt ballot language that properly describes the proposed constitutional amendment. To be entitled to the requested extraordinary relief, relators must establish a clear legal right to the requested relief, a corresponding clear legal duty on the part of the board to provide it, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Lucas Cty. Republican Party Executive Commt. v. Brunner*, 125 Ohio St.3d 427, 2010-Ohio-1873, 928 N.E.2d 1072, ¶ 9. Because of the proximity of the November 6 general election, relators lack an adequate remedy in the ordinary course of law to challenge the ballot language adopted by the ballot board. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.

{¶ 23} For the remaining requirements of clear legal right and clear legal duty, in the absence of any evidence of fraud or corruption, the dispositive issue is whether the ballot board abused its discretion and clearly disregarded applicable law in adopting the ballot language of the proposed constitutional amendment. *State ex rel. Ohio Liberty Council v. Brunner*, 125 Ohio St.3d 315, 2010-Ohio-1845, 928 N.E.2d 410, ¶ 30.

*Pertinent Constitutional and Statutory Provisions*

{¶ 24} In determining the applicable duties imposed on the ballot board, we must review the pertinent constitutional and statutory provisions. Under the Ohio Constitution, Article II, Section 1g, the ballot board's language must comply

with the Article XVI, Section 1 requirements for issues proposed by the General Assembly. In turn, Article XVI, Section 1 provides that the Ohio Ballot Board shall prescribe the ballot language for proposed constitutional amendments, that the ballot language "shall properly identify the substance of the proposal to be voted upon," and that the ballot "need not contain the full text nor a condensed text of the proposal." R.C. 3505.062(B) similarly imposes a duty on the ballot board to "[p]rescribe the ballot language for constitutional amendments proposed by the general assembly to be printed on the questions and issues ballot, which language shall properly identify the substance of the proposal to be voted upon." *See also* R.C. 3505.06(E). The Ohio Constitution, Article XVI, Section 1 vests this court with "exclusive, original jurisdiction in all cases challenging the adoption or submission of a proposed constitutional amendment to the electors."

{¶ 25} The question to be decided by this court is not whether the amendment proposed by relators should become part of the Ohio Constitution. *See State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 151-152, 226 N.E.2d 116 (1967). Nor is it pertinent "whether the members of this court might have used different words to describe the language used in the proposed amendment, but, rather, whether the language adopted by the ballot board properly describes the proposed amendment." *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981).

{¶ 26} Under Article XVI, Section 1, the sole issue is whether the board's approved ballot language "is such as to mislead, deceive, or defraud the voters." In *Bailey*, at 519, we adopted the following three-part test for evaluating the propriety of ballot language for a proposed constitutional amendment:

> First, a voter has the right to know what it is he is being asked to vote upon. *State, ex rel. Burton, v. Greater Portsmouth Growth Corp.* (1966), 7 Ohio St.2d 34, 37[, 218 N.E.2d 446].

Second, use of language which is " 'in the nature of a persuasive argument in favor of or against the issue * * *' " is prohibited. *Beck v. Cincinnati* (1955), 162 Ohio St. 473, 474-475[, 124 N.E.2d 120]. And, third, "the determinative issue * * * is whether the cumulative effect of these technical defects [in ballot language] is harmless or fatal to the validity of the ballot." *State, ex rel. Williams, v. Brown* (1977), 52 Ohio St.2d 13, 19[, 368 N.E.2d 838]; *State, ex rel. Commrs. of the Sinking Fund, v. Brown* (1957), 167 Ohio St. 71[, 146 N.E.2d 287].

See also *Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 141, 519 N.E.2d 347 (1988).

*Application of the Test to Relators' Claims:*

*Material Omissions*

{¶ 27} Relators challenge several aspects of the ballot language approved by the board. They first contend that the board's ballot language contains several material omissions: the commission's name, the selection process for commission members, the criteria for adopting redistricting plans, and provisions for an open redistricting process.

{¶ 28} The ballot board and the secretary of state initially contend that "ballot language is designed to communicate the substance of the proposed amendment in condensed terms" and that "omissions are necessary to the process of condensing the text of the proposed amendment." Respondents' contention suggests that the board had a duty to provide a condensed version of the proposed constitutional amendment, but this contention lacks merit. Both the constitutional and statutory provisions permit the inclusion of either the full text or a condensed text of the proposed constitutional amendment on the ballot. Ohio Constitution,

Article XVI, Section 1 ("The ballot need not contain the full text nor a condensed text of the proposal"); R.C. 3505.06(E).

{¶ 29} "In order to pass constitutional muster, '[t]he text of a ballot statement * * * must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected.' " *Bailey*, 67 Ohio St.2d at 519, 426 N.E.2d 493, quoting *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501 (1970), paragraph four of the syllabus. "In the larger community, in many instances, the only real knowledge a voter obtains on the issue for which he is voting comes when he enters the polling place and reads the description of the proposed issue set forth on the ballot." *Schnoerr v. Miller*, 2 Ohio St.2d 121, 125, 206 N.E.2d 902 (1965). The ballot language " 'ought to be free from any misleading tendency, whether of amplification, or omission.' " *Markus* at 203, quoting the trial judge's decision therein; *see also State ex rel. Miller Diversified Holdings, L.L.C. v. Wood Cty. Bd. of Elections*, 123 Ohio St.3d 260, 2009-Ohio-4980, 915 N.E.2d 1187, ¶ 25 (noting in an extraordinary-writ case challenging a zoning-amendment summary on a referendum petition that if the summary is misleading or inaccurate or contains material omissions that would confuse the average person, the petition is invalid and may not form the basis for submission to a vote).

{¶ 30} Therefore, if, as here, the ballot board approves a condensed text of the proposed constitutional amendment, any omitted substance of the proposal must not be material, i.e., its absence must not affect the fairness or accuracy of the text. *See State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 81, 283 N.E.2d 131 (1972) ("R.C. 3505.06 serves to inform and protect the voter and presupposes a condensed text which is fair, honest, clear and complete, and from which no essential part of the proposed amendment is omitted").

{¶ 31} We conclude that the ballot language approved by the board omits material provisions concerning the commission-member selection process and the commission's criteria for redistricting.

{¶ 32} For the selection process for the commission members, the board's approved language states that the proposed amendment would:

> 2. Create a state funded commission of appointed officials from a limited pool of applicants to replace the aforementioned [elected representatives]. The Commission will consist of 12 members as follows: four affiliated with the largest political party, four affiliated with the second largest political party and four not affiliated with either of the two largest political parties. Affirmative votes of 7 of 12 members are needed to select a plan.

{¶ 33} The board's approved ballot language includes one salient point concerning the selection process—that the proposal calls for a 12-member commission that is politically balanced in its composition, with four members from each of the two largest political parties and the remaining four members not affiliated with those political parties.

{¶ 34} But the approved ballot language says nothing about *who* will be selecting the commission members. It is axiomatic that "[w]ho does the appointing is just as important as who is appointed." Abel, *A Right to Counsel in Civil Cases: Lessons from Gideon v. Wainwright*, 15 Temp.Pol. & Civ.Rts.L.Rev. 527, 545 (2006); Fitzpatrick, *The Politics of Merit Selection*, 74 Mo.L.Rev. 675 (2009) (opining that merit-selection system for judges relying on state bar associations and lawyers may not necessarily be any less political than electing them or having elected officials appoint them). There is a vast difference between, for example, conferring the authority to select commission members on

one elected official and authorizing a bipartisan panel of individuals to perform the selection.  Without any description of this process even in the most general terms, the ballot language leaves voters to speculate about who selects the commission members.

{¶ 35} In this regard, even the ballot language originally submitted by Protect Your Vote Ohio, the committee opposed to relators' proposed amendment, specified that the selection process includes "appellate court judges."

{¶ 36} And notwithstanding respondents' argument to the contrary, relators' submitted ballot language contains a detailed summation of the selection process proposed by the amendment.

{¶ 37} By not including, at a minimum, *who* would be selecting the commission members, the ballot board's ballot language fails to properly identify one of the key elements of the proposed constitutional amendment.

{¶ 38} The ballot language is similarly deficient because it does not state what criteria the commission will use in drawing federal and state legislative districts.  A key part of the proposed amendment specifies that the commission must adopt the plan that complies with all applicable federal and state constitutional provisions, federal statutory provisions, and the contiguity requirement and that most closely meets the factors of community preservation, competitiveness, representational fairness, and compactness.  Proposed Article XI, Section 7(A), (B), and (C).  And the commission must also not draw or adopt a plan with an intent to favor or disfavor a political party, incumbent, or potential candidate.  *Id.* at Section 7(E).

{¶ 39} Instead of specifying any of the pertinent criteria that the commission must follow in redistricting, the ballot language merely states that if approved, the proposed constitutional amendment would "[c]hange the standards and requirements in the Constitution for drawing legislative and congressional districts."

14

**{¶ 40}** The board's ballot language thus states very generally that the proposed amendment would change the constitutional standards and requirements for creating federal and state legislative districts in Ohio without describing those changes or the pertinent redistricting criteria.

**{¶ 41}** Because this subject matter strikes at the very core of the proposed amendment, the board's condensed ballot statement does not fairly and accurately present the issue to be decided so as " 'to assure a free, intelligent and informed vote by the average citizen affected.' " *Bailey*, 67 Ohio St.2d at 519, 426 N.E.2d 493, quoting *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501, paragraph four of the syllabus. This defect is comparable to a referendum petition summarizing a resolution rezoning property as a change in the zoning on the property without specifying the precise nature of the change. *See State ex rel. Gemienhardt v. Delaware Cty. Bd. of Elections*, 109 Ohio St.3d 212, 2006-Ohio-1666, 846 N.E.2d 1223, ¶ 57 (referendum-petition summary of township zoning-amendment resolution "was inaccurate and contained material omissions that could have misled or confused petition signers about the precise nature and effect" of the resolution); *State ex rel. Brown v. Butler Cty. Bd. of Elections*, 109 Ohio St.3d 63, 2006-Ohio-1292, 846 N.E.2d 8, ¶ 32 (referendum petition summary of township zoning-amendment resolution complied with statutory requirement because it "adequately informed electors of the precise nature of the zoning change"). We can require no less in construing the constitutional and statutory requirements applicable to ballot-language cases for proposed statewide constitutional amendments, which have a greater effect on the people of this state than local zoning amendments.

**{¶ 42}** The ballot board and the secretary of state argue that the criteria to be used by the commission in redistricting "are already part of Ohio law and will not be changed by the proposed amendment" and that "including any changes to the standards would have little to no meaning unless the ballot language also

included a full list of the current standards." This argument, however, concedes that the proposed constitutional amendment does, in fact, include changes to the current standards and requirements for federal congressional redistricting and state legislative apportionment. At a minimum, the ballot summary could have included language that the proposed amendment would change the existing redistricting and reapportionment standards by, for example, maximizing the number of politically balanced districts, balancing the number of districts leaning towards each political party, specifying that no plan shall be drawn with intent to favor or disfavor a political party, incumbent, or potential candidate, and reducing the permissible population deviation from the ratio of representation for legislative districts. *See* Proposed Article XI, Sections 7(C)(2) and (C)(3), 7(E), and Section 3.

{¶ 43} By omitting the substantive criteria for redistricting that would be applied by the commission, the ballot language approved by the board fails to adequately inform the average voter of the precise nature of the proposed constitutional amendment.

{¶ 44} We reject relators' remaining claims of material omissions concerning the commission's name and the provisions for an open redistricting process because we are not persuaded that the omission of these items prevents voters from knowing the substance of the proposal being voted upon or misleads, deceives, or defrauds voters.

{¶ 45} Therefore, in response to relators' initial contentions, we find that the board's ballot language for relators' proposed constitutional amendment does not properly identify the substance of the proposed constitutional amendment because it does not state who selects the commission members and it fails to specify any of the pertinent criteria that the commission will apply in adopting federal and state legislative districts.

16

*Application of the Test to Relators' Claims:*
*Inaccurate and Prejudicial Language*

{¶ 46} Relators next claim that the ballot language adopted by the ballot board is defective because it contains inaccurate and prejudicial language concerning the commission-member selection process, commission funding, and challenges to legislative districts.

{¶ 47} We agree with relators' contention regarding the language approved by the ballot board in paragraph five of its summary, which states that the proposed amendment would "[m]andate the General Assembly to appropriate all funds as determined by the Commission." That statement is inaccurate and prejudicial because it indicates that the General Assembly must appropriate all funds to the commission without qualification.

{¶ 48} The actual text of the proposed constitutional amendment does not state that the redistricting commission would have—as the ballot board's language indicates—a blank check for all funds as determined by the commission. Rather, the proposed constitutional amendment expressly limits appropriations for the commission to those "necessary to adequately fund the activities" of the commission. Even the language proposed by the group opposing relators' amendment included the limitation that the General Assembly would "provide any and all funds *necessary* to finance operations of the commission." (Emphasis added.) In essence, the omission in the ballot's board's condensed ballot language of the qualifying limitations on commission funding is in the nature of a persuasive argument against its adoption. "[E]ffective arguments can be made [in proposed ballot language] as easily by what is said as by what is left unsaid, or implied." *Bailey*, 67 Ohio St.2d at 520, 426 N.E.2d 493.

{¶ 49} In fact, there is no indication or argument that the proposed constitutional amendment represents a departure from the state's appropriations for either the federal redistricting presently done by the General Assembly or the

state reapportionment currently accomplished by the Ohio Apportionment Board. Moreover, the subject of funding of the commission in the proposed constitutional amendment is not a major part of the proposal, comprising only two sentences appearing in over 20 new paragraphs, yet it appears in two of the five paragraphs in the ballot board's approved condensed ballot language.

{¶ 50} Respondents counter that the funding provision must be important to the proposed amendment because relators' argument in this case focuses on the issue. But respondents are wrong—the only reason that relators focus on this issue is because respondents did (and inaccurately at that) in the ballot language they approved.

{¶ 51} Thus, the secretary's ballot language, adopted by the ballot board, both inaccurately states that under the amendment, the General Assembly would have a duty to "appropriate all funds as determined by the Commission" without mentioning the "necessary" and "adequate[]" qualifications contained in the proposed amendment and erroneously implies that the amendment's funding provision is a material departure from the funding provisions for the entities currently responsible for redistricting and reapportionment in Ohio.

{¶ 52} On balance, if this were the only defect in the board's ballot language, the court may have been inclined to permit the language to stand. But because we have also determined that the ballot language contains material omissions, the board should remedy this error by either removing the commission-funding provisions completely or adding the limitations specified in the text of the proposed amendment.

{¶ 53} We find no merit in relators' remaining contentions concerning the board's use of the word "consultants" in lieu of "experts," its use of the terms "elected representatives" and "appointed officials" in describing the change to the commission, and its language concerning challenges to the adopted legislative districts.

{¶ 54} Therefore, for relators' second set of contentions, they have established that the ballot board's commission-funding provision is inaccurate and prejudicially misleading.

**Conclusion**

{¶ 55} Based on the foregoing, relators have established that the ballot board's condensed ballot language for the proposed redistricting amendment is defective in three ways:  (1) it materially omits who selects the commission members, (2) it materially omits the criteria used by the commission to adopt new legislative districts, and (3) it inaccurately states that the General Assembly must appropriate all funds as determined by the commission.  This factual inaccuracy and the material omissions deprive voters of the right to know what it is they are being asked to vote upon, and the factual inaccuracy concerning the funding of the commission is in the nature of a persuasive argument against the proposed amendment.

{¶ 56} The cumulative effect of these defects in the ballot language is fatal to the validity of the ballot because it fails to properly identify the substance of the amendment, a failure that misleads voters.

{¶ 57} We find lacking in merit respondents' claim that the inclusion of the full text of the proposed amendment in each polling place and in newspapers, *see* R.C. 3505.06(E) and 3505.062(G), renders any error in the ballot language harmless.  The lone case respondents cite for this proposition, *State ex rel. Williams v. Brown*, 52 Ohio St.2d 13, 368 N.E.2d 838 (1977), emphasized that the ballot challenged in that case "contains the actual text of the proposed amendment, not merely a condensed text." *Id.* at 19.  That is not the case here. Furthermore, as relators note, voters cannot leave their voting booth to read the full text of the proposed amendment and then return to cast their vote.  As noted previously, for many voters, their only knowledge of the proposed constitutional

amendment comes from the ballot language. *Schnoerr*, 2 Ohio St.2d at 125, 206 N.E.2d 902.

{¶ 58} Therefore, for all of the foregoing reasons, the ballot board's approved ballot language is invalid. While we do not suggest that either the board or the secretary was motivated by anything other than honorable intentions in approving the ballot language or that they intended to mislead voters, the language has the effect of misleading. We thus grant the writ of mandamus to compel the ballot board, including the secretary of state, to reconvene forthwith and adopt ballot language that properly describes the proposed constitutional amendment so that it may appear on ballot for the November 6, 2012 general election. *See Bailey*, 67 Ohio St.2d at 520, 426 N.E.2d 493.

Writ granted.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

LANZINGER, J., dissents.

_____

**O'CONNOR, C.J., concurring.**

{¶ 59} I concur in the judgment and opinion granting the writ of mandamus to compel the Ohio Ballot Board to reconvene forthwith to replace its previously adopted ballot language for State Issue 2 with language that properly describes the proposed constitutional amendment. I write separately, however, to respond to Justice Pfeifer's suggestion in his concurring opinion that we should usurp the ballot board's exclusive constitutional authority to craft the ballot language for the proposed constitutional amendment. To do so would violate the doctrine of separation of powers, the Ohio Constitution, and our precedent.

{¶ 60} "The first, and defining, principle of a free constitutional government is the separation of powers." *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 39. "While Ohio, unlike other jurisdictions,

20

does not have a constitutional provision specifying the concept of separation of powers, this doctrine is implicitly embedded in the entire framework of those sections of the Ohio Constitution that define the substance and scope of powers granted to the three branches of state government." *S. Euclid v. Jemison*, 28 Ohio St.3d 157, 158-159, 503 N.E.2d 136 (1986); *State ex rel. Cydrus v. Ohio Pub. Emps. Retirement Sys.*, 127 Ohio St.3d 257, 2010-Ohio-5770, 938 N.E.2d 1028, ¶ 2. " 'The essential principle underlying the policy of the division of powers of government into three departments is that powers properly belonging to one of the departments ought not to be directly and completely administered by either of the other departments * * *.' " *Bodyke* at ¶ 44, quoting *State ex rel. Bryant v. Akron Metro. Park Dist. of Summit Cty.*, 120 Ohio St. 464, 473, 166 N.E. 407 (1929).

{¶ 61} The Ohio Constitution, Article XVI, Section 1 vests exclusive jurisdiction to prescribe the ballot language for proposed constitutional amendments in the Ohio Ballot Board, which consists of the secretary of state and "four other members, who shall be designated in a manner prescribed by law and not more than two of whom shall be members of the same political party." Under R.C. 3505.061(A), "[o]ne of the members [of the ballot board] shall be appointed by the president of the senate, one shall be appointed by the minority leader of the senate, one shall be appointed by the speaker of the house of representatives, and one shall be appointed by the minority leader of the house of representatives."

{¶ 62} Although that same constitutional section vests this court with exclusive, original jurisdiction in all cases challenging the ballot language prescribed by the ballot board, it limits our authority to a determination of whether the contested language is invalid. *See* Ohio Constitution, Article XVI, Section 1 ("The ballot language shall not be held invalid unless it is such as to mislead, deceive, or defraud the voters"). Nothing in Article XVI, Section 1 or any other constitutional provision authorizes this court to sit as a super ballot board to prescribe ballot language for a proposed constitutional amendment after

we have determined that the language prescribed by the board is invalid. *See State ex rel. State v. Lewis*, 99 Ohio St.3d 97, 2003-Ohio-2476, 789 N.E.2d 195, ¶ 34 (when the Supreme Court declares an act of the legislative branch of government to be unconstitutional, the judiciary's role in the matter is complete).

{¶ 63} Consistent with the plain language of the Ohio Constitution, Article XVI, Section 1, once this court has exercised its jurisdiction by determining that the language prescribed by the ballot board is invalid, our authority over the matter ends, and it is up to the ballot board to exercise its exclusive constitutional authority to adopt ballot language that properly describes the proposed constitutional amendment. This practice is consistent with our precedent. For example, in *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 520, 426 N.E.2d 493 (1981), once we held that the ballot board's language for a proposed constitutional amendment was invalid, we granted a writ of mandamus to order the board to reconvene, forthwith, to adopt ballot language that properly described the proposed constitutional amendment so that it could appear on the general-election ballot. Therefore, as dictated by the doctrine of separation of powers and by the Ohio Constitution, Article XVI, Section 1 and our precedent construing it, we lack jurisdiction to infringe upon the ballot board's exclusive constitutional authority to prescribe the appropriate ballot language after this court's determination that it is invalid.

LUNDBERG STRATTON and MCGEE BROWN, JJ., concur in the foregoing opinion.

_____

**PFEIFER, J., concurring.**

{¶ 64} I concur in the judgment granting relators' request for a writ of mandamus, but write separately to suggest ballot language that would " 'assure a free, intelligent and informed vote by the average citizen affected.' " *State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981), quoting

*Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501 (1970), paragraph four of the syllabus. Given the proximity of the applicable deadlines for boards of elections to have absentee ballots printed and ready to use, it is appropriate for this court to provide specific guidance to the ballot board regarding ballot language.

### The Ballot Board Language

Paragraph One

**{¶ 65}** Paragraph one of the board's language uses terminology—"elected representatives" and "appointed officials" that, while perhaps not inherently false, strays toward editorial commentary. In adopting that language, the ballot board appears to place its thumb on the scales in favor of one side of the issue. Specifically identifying the institutions currently entrusted with federal congressional redistricting and state legislative reapportionment would better inform voters of the substance of the change of the proposed amendment. Including the name of the commission that would be adopted if the voters approve the measure would also enhance voters' understanding of the proposal.

Paragraph Two

**{¶ 66}** In regard to paragraph two of the ballot language, I disagree with the majority that the particulars of the selection process need to be included. Adding the complex, multilayered details of the commission-member selection process, including a reference to the duties of the chief justice and the court of appeals judges, would not significantly add to voters' knowledge of the proposal. The commission's second paragraph sufficiently explains the key point—the end product of the selection process is a commission that is effectively politically neutral, composed of four Republicans, four Democrats, and four independents. Judicial involvement in the selection process is not material to understanding the central import of the amendment.

Paragraph Four

{¶ 67} I agree with the majority that the ballot board's approved language in paragraph four completely fails to inform the average voter of the preeminent part of the amendment—the criteria required for the commission to draw district lines. This is the guts of the proposal and adds significant new requirements to the drawing of district lines.

Paragraph Five

{¶ 68} I concur in the majority's conclusion regarding paragraph five that by not including the qualifying language for commission funding, the ballot board's language is inaccurate and misleading. New language should include the limitations specified in the actual text of the amendment—"appropriations necessary to adequately fund the activities of the Commission."

**New Ballot Language**

{¶ 69} By expressly suggesting to the ballot board appropriate language that could be adopted, we would prevent any further delays concerning this matter that might prejudicially affect the right to intelligently vote on this important issue. In my view, the following language would properly summarize the substance of the relators' proposed amendment:

Issue 2

[TITLE HERE]

Proposed Constitutional Amendment

Proposed by Initiative Petition

To add and repeal language in Sections 1, 3, 4, 6, 7, 9, and 13 of

Article XI,

repeal Sections 8 and 14 of Article XI, and add a new Section 16 to

Article XI of the Constitution of the State of Ohio

A majority yes vote is necessary for the amendment to pass.

The proposed amendment would:

1. Remove the authority of the General Assembly in federal congressional redistricting and the authority of the Ohio Apportionment Board in state legislative reapportionment and grant new authority to draw the boundaries of congressional and state legislative district lines to an appointed commission to be known as the Ohio Citizens Independent Redistricting Commission.

2. Create a state-funded commission of appointed officials from a limited pool of applicants to replace the aforementioned. The commission will consist of 12 members as follows: four affiliated with the largest political party, four affiliated with the second largest political party, and four not affiliated with either of the two largest political parties. Affirmative votes of 7 of 12 members are needed to select a plan.

3. Require that new legislative and congressional districts be immediately established by the commission to replace the most recent districts adopted by elected representatives, which districts shall not be challenged except by court order until the next federal decennial census and apportionment. In the event the commission is not able to determine a plan by October 1, the Ohio Supreme Court would adopt a plan from all the plans submitted to the commission.

4. Change the standards and requirements in the Constitution for drawing state legislative and federal congressional districts by requiring that no plan shall be drawn or adopted with intent to favor or disfavor a political party, incumbent, or potential candidate and requiring that the commission adopt the redistricting

plan that most closely meets the factors of community preservation (minimizing the number of governmental units that must be divided between different districts), competitiveness (maximizing the number of politically balanced districts), representational fairness (balancing the number of districts leaning toward each political party so that the number of districts leaning toward each party closely corresponds to the preferences of the voters of Ohio), and compactness (creating districts that are compact). No plan shall be adopted that does not comply with all applicable state and federal constitutional provisions and all applicable federal statutory provisions and the requirement that each district shall be composed of contiguous territory.

5. Mandate the General Assembly to make appropriations necessary to adequately fund the activities of the commission.

If approved, the amendment will be effective 30 days after the election.

YES

NO

SHALL THE AMENDMENT BE

APPROVED?

_____

**LANZINGER, J., dissenting**.

{¶ 70} I respectfully dissent. The Ohio Constitution, Article XVI, Section 1 creates a high standard for declaring ballot language invalid:

The ballot language shall properly identify the substance of the proposal to be voted upon. The ballot need not contain the full text nor a condensed text of the proposal.

> * * * The ballot language *shall not be held invalid unless it is such as to mislead, deceive, or defraud* the voters.

(Emphasis added.)

{¶ 71} The ballot language summarizes and identifies the substance of the proposal, and

> the test for determining the validity of proposed ballot language is not whether the members of this court might have used different words to describe the language used in the proposed amendment, but, rather, whether the language adopted by the ballot board properly describes the proposed amendment.

*State ex rel. Bailey v. Celebrezze*, 67 Ohio St.2d 516, 519, 426 N.E.2d 493 (1981), citing *State ex rel. Foreman v. Brown*, 10 Ohio St.2d 139, 150, 226 N.E.2d 116 (1967).

{¶ 72} The majority identifies what it considers to be three flaws in the ballot language approved by the Ohio Ballot Board: the omission of any mention of who appoints the new commission, the omission of standards to be used by the new commission in its redistricting, and the omission of the limitation on the commission's funding to that which is necessary for its activities. But these omissions do not make the ballot summary itself false. The proposed change would give reapportionment authority to appointed members rather than to current elected members. The standards for the reapportionment process are not spelled out, but it is noted that they would be changed. And finally, the ballot language states that the General Assembly would fund the commission.

{¶ 73} The varying opinions of the justices show that there are different interpretations of what must be included in a summary, suggesting that to avoid

these concerns, the entire text of the proposed amendment should be placed on the ballot.  But this is not what the constitution requires.  Although I might have written a different summary in light of the arguments made, I cannot say that these purported flaws rise to the level of misleading, deceiving, or defrauding the voters.  Nor do I believe that this court should rewrite the ballot summary, as one of the concurring justices suggests.

{¶ 74} I would hold the omissions to be harmless because the summary properly identifies the substance of the proposal, and I would therefore deny the writ.

_____

McTigue & McGinnis, L.L.C., Donald J. McTigue, Mark A. McGinnis, and J. Corey Colombo, for relators.

Michael DeWine, Attorney General, and Richard N. Coglianese, Sarah E. Pierce, and Michael J. Schuler, Assistant Attorneys General, for respondents.

_____