NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2021-OHIO-3209

THE STATE EX REL. RHOADS ET AL. *v.* HAMILTON COUNTY BOARD OF ELECTIONS ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Rhoads v. Hamilton Cty. Bd. of Elections*, Slip Opinion No. 2021-Ohio-3209.]**

*Elections—Mandamus—Writ of mandamus sought to compel changes to ballot language for proposed amendment to city charter—Writ granted in part and denied in part and board of elections ordered to prepare and certify new ballot language relating to portion of proposed amendment.*

(No. 2021-1123—Submitted September 14, 2021—Decided September 16, 2021.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} In this expedited election case, four city of Cincinnati electors—relators, Brewster Rhoads, Jane Anderson, Cecil Thomas, and Jane Simon—seek a

writ of mandamus to compel changes to ballot language for a proposed amendment to the Cincinnati City Charter. We grant the writ in part and deny it in part.

## I. BACKGROUND

{¶ 2} On August 30, 2021, an initiative petition proposing amendments to the Cincinnati City Charter was filed with the Cincinnati City Council. The petition contained a sufficient number of valid signatures for the proposal to be submitted to the city's electors. As required under Article XVIII, Sections 8 and 9 of the Ohio Constitution, city council passed an ordinance for the submission of the proposal to the electorate at the November 2021 election. The ordinance included language summarizing the proposed amendment for use on the ballot.

{¶ 3} R.C. 3505.06(E) authorizes respondent Hamilton County Board of Elections to prepare and certify "condensed text" for use on the ballot. On September 4, relators' counsel sent a letter to the board, arguing that the ballot language that was proposed by city council was deficient in numerous ways. Despite that objection, the board certified ballot language that is identical to city council's summary. The Ohio secretary of state then approved the ballot language pursuant to R.C. 3501.05(J).

{¶ 4} On September 8, relators filed this original action in mandamus against the board and its members—respondents Gwen L. McFarlin, Alex M. Triantafilou, Joseph L. Mallory, and Charles H. Gerhardt III—alleging that the ballot language that was certified by the board misrepresents the proposed amendment and omits material information. Relators seek to compel respondents to prepare and approve new ballot language "that is accurate and not misleading, and that does not contain material omissions." We granted the motion to intervene of respondent CincyReform, which describes itself as "the appellation of the committee formed and designated on the petition proposing amendments to the Cincinnati City Charter at issue herein." Amicus curiae, city of Cincinnati, filed a reply brief in support of relators.

## II.  ANALYSIS

### A.  Legal standard

{¶ 5} To be entitled to a writ of mandamus, relators must establish by clear and convincing evidence a clear legal right to the requested relief, a clear legal duty on the part of respondents to provide it, and the lack of an adequate remedy in the ordinary course of the law.  *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6.  Given the proximity of the November election, we conclude that relators lack an adequate remedy in the ordinary course of the law.  *See State ex rel. Cincinnati for Pension Reform v. Hamilton Cty. Bd. of Elections*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, ¶ 21.

{¶ 6} To establish a clear legal right to the requested relief and a clear legal duty on the part of respondents to provide it, relators must show that respondents abused their discretion or clearly disregarded the law in certifying the ballot language.  *See State ex rel. Kilby v. Summit Cty. Bd. of Elections*, 133 Ohio St.3d 184, 2012-Ohio-4310, 977 N.E.2d 590, ¶ 8.  We recently discussed the general principles applicable to ballot language in *State ex rel. Cincinnati Action for Housing Now v. Hamilton Cty. Bd. of Elections*, __ Ohio St.3d __, 2021-Ohio-1038, __ N.E.3d __, ¶ 7-8:

> "When a local issue qualifies for the ballot, the board of elections may either use the entire text of the proposed charter amendment as ballot language or it may prepare and certify a condensed text so long as the text 'properly describe[s]' the issue or amendment."  (Brackets sic.)  [*Cincinnati for Pension Reform*] at ¶ 22, quoting R.C. 3505.06(E).  Once a board of elections certifies ballot language, it must transmit the language to the secretary of state for final approval.  R.C. 3501.11(V).

Ballot language "must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected." *Markus v. Trumbull Cty. Bd. of Elections*, 22 Ohio St.2d 197, 259 N.E.2d 501 (1970), paragraph four of the syllabus. To satisfy R.C. 3505.06(E), ballot language must be "fair, honest, clear and complete" and "no essential part of the proposed amendment" may be omitted. *State ex rel. Minus v. Brown*, 30 Ohio St.2d 75, 81, 283 N.E.2d 131 (1972). When assessing ballot language, this court asks three questions: (1) Does the text tell voters what they are being asked to vote upon?, *Cincinnati for Pension Reform* at ¶ 24, (2) Does it impermissibly use language that amounts to a persuasive argument for or against the measure?, *id.* at ¶ 25, and (3) If there are technical defects in the text, is the cumulative effect of those defects harmless?, *id.* at ¶ 26.

{¶ 7} Relators argue that the certified ballot language misrepresents the proposed charter amendment in several ways and that it omits material information.

**B. Relators' claims**

*1. City council's approval before the commencement of litigation*

{¶ 8} The proposed amendment would add the following sentence to Article II, Section 3 of the city charter: "The affirmative vote of a majority of members of the council shall be required to authorize the commencement of any litigation on behalf of the City of Cincinnati or any of its officials." The ballot language states that this provision would "require approval by Council before litigation on behalf of the City of Cincinnati or any of its officials can be filed."

{¶ 9} Relators argue that the ballot language omits two pieces of material information. Relators first contend that the language does not explain that the term

"litigation" may include criminal prosecutions and civil-enforcement matters. They argue that if the proposed amendment passes, city council's authorization will be required for all the city's misdemeanor and traffic prosecutions and any zoning-code-enforcement proceedings, housing-code-enforcement proceedings, building-code-enforcement proceedings, and nuisance-abatement proceedings. Relators also argue that the proposed amendment would require city officials to obtain city council's approval before commencing litigation in the officials' personal capacities. They contend that the ballot language must state that the proposed amendment would "require approval by Council before *any criminal case, civil case, or civil enforcement proceeding brought* on behalf of the City of Cincinnati or any of its officials can be filed, *including suits by such officials in their personal capacities*." (Italics and boldface sic.)

{¶ 10} Citing to this court's decision in *State ex rel. Voters First v. Ohio Ballot Bd.*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, ¶ 29, 34, 40-45, relators argue that the ballot language must be amended to "amplify[]" and "elaborate" on the breadth of the term "litigation." In *Voters First*, we held that the ballot language at issue in that case was inadequate because it failed to explain the selection process for members of a commission that would be created by the ballot measure. *Id*. at ¶ 31-37. We invalidated the ballot language because it omitted material information that was in the proposal itself. *Id*. at ¶ 30.

{¶ 11} *Voters First* does not support relators' claim, because they do not argue that the ballot language omits any substance of the proposal itself. Indeed, in their merit brief, relators point out that "[n]either the Ballot Language nor the proposed Charter Amendment defines the word 'litigation.' " The ballot language similarly mirrors the proposed amendment's text concerning litigation brought on behalf of city officials.

{¶ 12} Relators seek to add text to the ballot language explaining how the proposed amendment might affect the way that the city functions. We have held

that explanatory text may be included in ballot language if it is accurate and addresses a subject that is in the proposed amendment itself. *See Cincinnati for Pension Reform*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, at ¶ 44-49. But when we have approved of the use of explanatory text, the approval has been in the context of a challenge to language that a board of elections chose to include. *See, e.g., id.*; *Kilby*, 133 Ohio St.3d 184, 2012-Ohio-4310, 977 N.E.2d 590, at ¶ 22-23; *Cincinnati Action for Housing Now*, __ Ohio St.3d __, 2021-Ohio-1038, __ N.E.3d __, at ¶ 19-21. In those cases, we held that it is within a board of election's discretion to include accurate explanatory text. *Cincinnati for Pension Reform* at ¶ 52-54; *Kilby* at ¶ 8, 23, 26; *Cincinnati Action for Housing Now* at ¶ 6, 21.

{¶ 13} Here, in contrast, relators argue that the board abused its discretion by *not* adding explanatory text. Relators cite to no precedent supporting the conclusion that a board abuses its discretion by certifying ballot language that does not expound upon the possible effects of a proposal. We hold that the board did not abuse its discretion in summarizing the proposed amendment to Article II, Section 3 of the city charter. The ballot language is fair and accurate, because it mirrors the language of the proposal itself.

*2. Compensation of council members and the mayor*

{¶ 14} Article II, Section 4 of the Cincinnati City Charter currently sets the annual compensation of city-council members at three-fourths of the annual compensation of Hamilton County commissioners. The proposed amendment would eliminate that provision and replace it with the following:

Each member of council shall receive annual compensation in an amount equal to the median family income for the city of Cincinnati as reported in the American Community Survey 1-Year Report as published by the United States Census Bureau for the year prior to

the beginning of each calendar year. The annual compensation payable to each member of council shall not increase or decrease during any calendar year once such compensation is established, but the annual compensation payable to a member of council may increase or decrease from one calendar year to the next.

The ballot language summarizes that proposal by stating that the amendment would "establish the compensation for members of Council to the amount equal to the median family income for the City of Cincinnati and adjust that compensation annually."

{¶ 15} Relators argue that the board's summary is misleading because it omits any reference to the census bureau's report that would be used to determine council-member salaries. And they contend that the census bureau's report provides only an imprecise estimate of "Median Household Income," not a definite amount as suggested by the ballot language. Moreover, they argue that in any given year, the census bureau's report may be based on estimates, not actual data. Based on those arguments, relators contend that the ballot language should be changed to state that the proposed amendment would

establish the compensation for members of Council to [*sic*] the amount equal to the median family income for the City of Cincinnati ***as reported by the U.S. Census Bureau, except that it would not establish council member compensation for the year following one in which the U.S. Census Bureau does not report the actual median family income for the City of Cincinnati***.

(Brackets, italics, and boldface sic.)

**{¶ 16}** Relators' argument concerning the absence of any reference to the census bureau's report raises the issue whether the omission is material—i.e., whether it "affect[s] the fairness or accuracy of the text." *Voters First*, 133 Ohio St.3d 257, 2012-Ohio-4149, 978 N.E.2d 119, at ¶ 30. In other words, is the proposed language regarding the census bureau's report an "essential part" of the amendment that must be described? *Minus*, 30 Ohio St.2d at 81, 283 N.E.2d 131.

**{¶ 17}** We hold that the lack of any reference to the census bureau's report is immaterial, because the ballot language clearly tells voters that they are being asked to decide whether council-member salaries should be tied to the city's median family income. Relators have not shown that stating the specific source for determining that amount is essential for a voter to understand the substance of the proposed amendment. *See Markus*, 22 Ohio St.2d 197, 259 N.E.2d 501, at paragraph four of the syllabus. The use of the census bureau's report might be an important detail of the proposal, but the nature of a summary allows for the omission of "some important but nonessential information," *Cincinnati for Pension Reform*, 137 Ohio St.3d 45, 2013-Ohio-4489, 997 N.E.2d 509, at ¶ 75.

**{¶ 18}** We reject relators' other arguments presenting potential issues that might arise if the city were to determine council-member compensation based on an annual census-bureau report. Those arguments challenge the administration of the proposed amendment, not the language of the ballot summary. Any concerns about the administration of the yet-to-be-adopted provision are premature. *See State ex rel. DeBrosse v. Cool*, 87 Ohio St.3d 1, 6, 716 N.E.2d 1114 (1999) ("Any claims alleging the unconstitutionality or illegality of the substance of the proposed ordinance, or action to be taken pursuant to the ordinance when enacted, are premature before its approval by the electorate"). Moreover, as determined above, relators have not shown that the board abused its discretion by not adding explanatory text to its summary.

{¶ 19} Relators also point out that Article III, Section 1 of the city charter provides that "[t]he mayor shall receive annual compensation in an amount equal to twice the compensation payable to a member of council as provided in Article II, Section 4." They argue that the ballot language is deficient because it does not mention that the proposal would also affect the mayor's compensation. Relators have once again not shown that the board omitted from its summary an essential part of the proposal. In fact, the mayor's compensation is not part of the proposal at all. Relators have not demonstrated any duty on the part of the board to prepare ballot language explaining how the proposed amendment would interact with other parts of the existing law.

3. *Forfeiture of office when the mayor or a council member "moves from the city"*

{¶ 20} The proposed charter amendment would repeal existing Article II, Section 4a of the city charter and replace it with the following provision:

> No person shall serve as mayor or a member of council unless such person shall have been a resident of the city for at least one year prior to assuming office, either through election or otherwise, and such person shall continue to be a resident of the city and a qualified elector thereof. Any person serving as mayor or member of council who should cease to possess any of said qualifications, *or moves from the city*, shall forthwith forfeit the office.

(Emphasis added.) The ballot language summarizes this section by stating that the proposal would "require candidates for Mayor and Council to be residents of the City of Cincinnati for at least one year prior to assuming office." The ballot

language does not refer to the second sentence of the proposal concerning forfeiture of office.

{¶ 21} Relators' primary argument here is that the ballot language's failure to mention the phrase "moves from the city" is a material omission. Relators propose a hypothetical situation in which the mayor or a city-council member maintains residency in the city but moves temporarily due to a military deployment; they suggest that the language of the proposed amendment could lead to unforeseen and undesired consequences for officeholders who serve in the military. But relators do not explain how including the phrase "moves from the city" would allow voters to better understand what they are being asked to vote upon. Instead, relators focus on the language *of the proposed amendment*, arguing that it is "extremely loose and undefined" and "vague." We reject relators' argument because it is a challenge to the proposed amendment itself, not the ballot language. Relators have not shown that the board has a duty to explain to voters how the proposed amendment might affect officeholders who serve in the military.

{¶ 22} That leaves the issue whether the forfeiture-of-office provision, in general, is an essential part of the proposal that must be included in the ballot language. *See Markus*, 22 Ohio St.2d 197, 259 N.E.2d 501, at paragraph four of the syllabus. We conclude that it is not, because that provision does not propose a material change to existing law. Cincinnati Municipal Code 100-1 governs the qualifications for the office of mayor, and Cincinnati Municipal Code 101-1 governs the qualifications for members of city council. Both sections require the officeholders to be electors of the city and provide that an officeholder who ceases to be an elector "or removes from the city shall forthwith forfeit" his or her office. Cincinnati Municipal Code 100-1 and 101-1. It is unnecessary for the ballot language to refer to the second sentence of proposed Article II, Section 4a, because that provision does not propose a material change to the forfeiture-of-office provisions that already apply to the mayor and city-council members.

#### 4. Filling city-council vacancies

{¶ 23} Article II, Section 4b of the city charter governs how vacancies on the city council are to be filled. In short, it allows a council member to designate which of his fellow council members may choose his successors if his seat becomes vacant. The proposed amendment would repeal that procedure and replace it. Relators argue that the ballot language does not accurately describe the proposal.

{¶ 24} The following sentence of the proposed amendment is at issue:

> If a member of council dies, resigns, or is removed, then the person who received the highest number of votes for election to council at the most recent municipal election but who was not declared elected to council at such election and *who is not otherwise already serving or has served as a member of council since the most recent election* shall be the successor to hold the office for the remainder of the unexpired term of that member of council, provided such person shall not have previously failed to accept the position as a member of council at any time since the most recent municipal election.

(Emphasis added.)

{¶ 25} The ballot language summarizing that provision states that the proposed amendment would

> eliminate the use of successor designation by members of Council and * * * provide that the successor to a member of Council who dies, resigns, or is removed shall be the candidate *who is not serving or has not served on Council* who received the highest number of

votes at the most recent municipal election but was not declared elected to Council.

(Emphasis added.)  The parties disagree about the meaning of the language in the proposal and ballot language emphasized above.  Relators argue that the ballot language is "diametrically opposed" to the proposed amendment, because it changes the phrase "has served as a member of council" to "has not served on Council."  The board and CincyReform disagree, arguing that the phrase "has not served" is accurate and that relators' reading is acontextual and fails to consider the language as a whole.

{¶ 26} We need not opine on the correct interpretation of the language at this juncture.  Adopting either party's argument would amount to our providing an advisory opinion as to the meaning of the proposed amendment's language.  Rather than attempt to interpret the meaning of the proposed amendment's language, we believe that the best course is to simply provide the voters with the actual language of the proposed change.

{¶ 27} Accordingly, the board is directed to prepare and certify the following ballot language regarding the proposed amendment of Article II, Section 4b of the city charter:

to eliminate the use of successor designation by members of the Council and to provide that if a member of council dies, resigns, or is removed, then the person who received the highest number of votes for election to council at the most recent municipal election but who was not declared elected to council at such election and who is not otherwise already serving or has served as a member of council since the most recent municipal election shall be the

successor to hold the office for the remainder of the unexpired term of that member of council.

### 5. *Filling city-council vacancies: the notice requirement*

{¶ 28} The proposed amendment of Article II, Section 4b of the city charter would require the clerk of council, upon the creation of a vacancy on the city council, to immediately give written notice to the person designated to be the successor to the vacant seat. The proposal further provides that "*[w]ithin two weeks of being informed by the clerk of council*, the person designated herein as the successor shall certify in writing to the clerk of council that he or she satisfies all requirements to hold the office of member of council and the he or she accepts the position as a member of council." (Emphasis added.) Relators argue that if the clerk of council is unable to provide the required notice to a designated successor, then the process will stall, preventing the vacancy from being filled. They contend that the relevant ballot language must state that the proposal would

> provide that the successor to a member of Council who dies, resigns, or is removed shall be the candidate who is not serving or has served on Council who received the highest number of votes at the most recent municipal election but was not declared elected to Council, ***provided that the clerk of the Council can serve the proper notice on such person * * *.***

(Italics and boldface sic.)

{¶ 29} We reject relators' argument because it addresses the functionality of the proposed amendment, not the fairness or accuracy of the ballot language. Relators have not shown that this notice provision is an essential part of the proposal or that the board has a duty to alert voters to the possibility that the clerk

of council might not be able to successfully notify a potential successor of a vacancy.

### 6. *Filling city-council vacancies: the residency requirement*

{¶ 30} As noted above, the proposed amendment of Article II, Section 4a of the city charter provides that "[n]o person shall serve as mayor or a member of council unless such person shall have been a resident of the city for at least one year prior to assuming office, either through election or otherwise." Relators rightly note that this residency requirement would apply to anyone designated to succeed to a vacant seat on the city council pursuant to proposed Article II, Section 4b. Relators contend that the board's summary of proposed Article II, Section 4b is deficient because it does not specify that the residency requirement would apply to appointees.

{¶ 31} The ballot language summarizing the proposed amendment of Article II, Section 4a states that the proposal would "require *candidates* for Mayor and Council to be residents of the City of Cincinnati for at least one year prior to assuming office." (Emphasis added.) This language is incomplete, because it does not make clear that noncandidates also must be residents of the city for at least a year before assuming office. But the absence of such language does not rise to the level of a material omission, because the ballot language as a whole adequately informs voters about the residency and vacancy-filling provisions that they are being asked to vote upon. We hold that the board did not abuse its discretion by failing to specify that the residency requirement would apply to noncandidates.

### 7. *Personal liability imposed on the mayor and council members*

{¶ 32} The proposed charter amendment would establish Article IV, Section 11 of the city charter, which would provide:

> The mayor or any member of council shall be liable to the
> city for any judgment in, or amount negotiated in settlement of, any

14

civil action or appeal, together with any attorney fees and expenses incurred or expended by the city in defending such civil action or appeal, arising from the violation or alleged violation by the mayor or member of council of state law relating to open meetings or public records, provided that the act or omission giving rise to the civil action or appeal was undertaken by the mayor or member of council in an effort to avoid or circumvent the requirements of such state law or done purposely, knowingly, in bad faith, or in a wanton or reckless manner.  The act or omission of the mayor or member of council giving rise to such liability may be established in the civil action itself or in a separate civil action commenced by the city solicitor or by a taxpayer who may bring such civil action and recover his or her costs, including attorney fees, only after the city solicitor fails, upon the written request of the taxpayer, to bring such civil action.

{¶ 33} The ballot language states that this amendment would "provide that the Mayor and members of Council are personally liable for violations of state law regarding open meetings or public records where the violation was to avoid or circumvent those laws or was purposeful, knowing, in bad faith, or in a wanton or reckless manner."  This ballot language is accurate—personal liability would attach under the circumstances described.

{¶ 34} Relators nevertheless argue that the ballot language misrepresents the proposed amendment because, they contend, the proposed amendment could allow the mayor and council members to be held personally liable, even when they are not found by a court to have violated Ohio law relating to open meetings or public records.  Even if relators are correct in their theory as to other circumstances in which personal liability could attach, they have not explained how those possible

outcomes could be concisely summarized in ballot language. *See Jurcisin v. Cuyahoga Cty. Bd. of Elections*, 35 Ohio St.3d 137, 142, 519 N.E.2d 347 (1988) ("Additional language may have made the summary more complete as to some aspects of the charter amendment, but would also have defeated the purpose of the summary in providing a clear, concise description of the amendment to the voters").

{¶ 35} We reject relators' argument because the ballot language accurately and concisely summarizes the proposed amendment.

### 8. Incorporated procedures for the mayor's removal

{¶ 36} The proposed charter amendment would establish Article IX, Section 2c of the city charter, which would provide: "The mayor may be removed from office before expiration of his or her term. The process and procedure for such removal shall include, but are not limited to, all provisions of state law providing for removal of any elective officer of a municipal corporation." The ballot language regarding that proposal states that it would "provide for the removal of the Mayor as provided by state law and other processes."

{¶ 37} Relators argue that the ballot language is insufficient because it does not inform voters about the specific state laws that provide for the removal of a municipal elected official or disclose to voters that—despite the inclusion of the phrase "are not limited to"—no additional processes for removing an elected municipal official currently exist. Relators contend that the ballot language must "apprise" voters of several pertinent sections of the Revised Code—namely, R.C. 3.07, 3.08, 705.92, and 733.72—and that the proposed amendment would provide for the removal of the mayor "***through*** other processes ***that do not exist and are not specified in the Charter Amendment***." (Italics and boldface sic.)

{¶ 38} We hold that the board did not abuse its discretion in its summary of proposed Article IX, Section 2c. To start, adopting relators' suggestion that the board must explain several state-law provisions within the ballot language would defeat the purpose of a summary. *See Jurcisin*, 35 Ohio St.3d at 142, 519 N.E.2d

347. Moreover, the board's summary is nearly identical to the proposed amendment itself. Relators have not shown that the board has a duty to add explanatory text to ballot language that is already accurate.

### III. CONCLUSION

{¶ 39} Relators have shown that the board abused its discretion in preparing and certifying only certain ballot language for the proposed amendment of Article II, Section 4b of the Cincinnati City Charter. We grant a writ of mandamus, in part, compelling the board, forthwith, to prepare and certify new ballot language regarding that proposal that includes the following:

> to eliminate the use of successor designation by members of the Council and to provide that if a member of council dies, resigns, or is removed, then the person who received the highest number of votes for election to council at the most recent municipal election but who was not declared elected to council at such election and who is not otherwise already serving or has served as a member of council since the most recent municipal election shall be the successor to hold the office for the remainder of the unexpired term of that member of council.

We deny the writ in all other respects.

Writ granted in part
and denied in part.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, STEWART, and BRUNNER, JJ., concur.

_____

Markovits, Stock & DeMarco, L.L.C., and Paul M. DeMarco, for relators.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and David T. Stevenson and Jesse K. Daley, Assistant Prosecuting Attorneys, for respondents Hamilton County Board of Elections, Gwen L. McFarlin, Alex M. Triantafilou, Joseph L. Mallory, and Charles H. Gerhardt III.

The Law Firm of Curt C. Hartman, and Curt C. Hartman, for respondent CincyReform.

Andrew W. Garth, Cincinnati City Solicitor, Emily Smart Woerner, Deputy City Solicitor, and Erica Faaborg, Assistant City Solicitor, for amicus curiae, city of Cincinnati, in support of relators.

_____